377 A.2d 153

**In re Male Infant B. E.**

**Appeal of Judith R. SHAPIRO a/k/a Judith R. Shahan.**

Supreme Court of Pennsylvania.

Argued March 10, 1977.

Decided Aug. 17, 1977.

---

Carl M. Moses, Sharon, for appellant.

No appearance for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POM-EROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

The issue presented is whether a parent may petition to terminate the parental rights of the other parent absent any plans for adoption of the child. Appellant, the natural mother of Male Infant B. E., filed a petition for involuntary termination of the natural father's parental rights to the child in the Orphans' Court Division of the Court of Common Pleas for Allegheny County. The petition was refused without hearing because the petition contained no averment that adoption proceedings with respect to the child were contemplated. Appellant's exceptions were dismissed by the Orphans' Court en banc. This appeal followed.[1]

Appellant has had custody of her son since his birth and has not remarried since her divorce from the natural father. She concedes she has no plans to have the child adopted by a stepparent or any other person, but argues that she is nonetheless entitled to a decree terminating the parental rights of the natural father, upon proof that he has abandoned the child.[2] We agree with the Orphans' Court that the Adoption Act[3] provides for termination of parental rights only in connection with a plan for adoption, and affirm.

Appellant bases her argument on section 312 of the Adoption Act,[4] which governs standing to bring a petition for involuntary termination. Section 312 provides:

"A petition to terminate parental rights with respect to a child under the age of eighteen years may be filed by (i) either parent when termination is sought with respect to

1. This Court has exclusive jurisdiction of appeals from final orders of the Courts of Common Pleas in matters decided in the Orphans' Court Division, pursuant to the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, art. II, section 202(3), 17 P.S. § 211.202(3) (Supp.1976).

2. See Act of July 24, 1970, P.L. 620, § 311, 1 P.S. § 311 (Supp.1976).

3. 1 P.S. §§ 101 et seq. (Supp.1976).

4. 1 P.S. § 312 (Supp.1976).

the other parent, (ii) an agency, or (iii) the individual having custody or standing in loco parentis to the child and who has filed a report of intention to adopt required by section 331. When the petition is filed by a parent who is under the age of eighteen it shall be joined in by at least one of the parents of such petitioning parent, unless the court is satisfied that such joinder would not be in the best interest of the petitioning parent and would serve no useful purpose. A petition filed under this section shall contain an averment that the petitioner will assume custody of the child until such time as the child is adopted."

Appellant asserts it is necessary that a report of intention to adopt be filed only when a petition has been brought pursuant to subsection (iii). She reasons that since no report is required when a parent petitions for termination of the rights of the other parent, section 312 authorizes such a petition in the absence of an adoption plan. We do not agree.

The reason a parent may petition for termination of the parental rights of the other parent when no report of intention to adopt has been filed is not to permit termination when adoption is not contemplated. Rather, section 312 does not require that a report of intention to adopt be filed because such a report is not necessary for many adoptions. See section 331, 1 P.S. § 331 (Supp.1976). Section 331 states: "No report shall be required when the child is the child, grandchild, stepchild, brother or sister of the whole or half blood, or niece or nephew by blood or marriage of the person receiving or retaining possession, custody or control." Id.[5]

5. Similarly, a report of intention to adopt need not be filed prior to a petition to terminate parental rights brought by an agency pursuant to subsection (ii) of section 312. *Adoption of Stone Minors*, 58 D.&C.2d 759 (1973). This does not mean, as appellant asserts, that an agency may terminate parental rights when no adoption is contemplated. As defined in the Adoption Act, an "agency" is an organization "providing adoption services." 1 P.S. § 102 (Supp. 1976). In *Adoption of Stone Minors*, supra, President Judge Shughart explained why no report is required when an agency brings a petition for termination of parental rights:

"One of the avowed purposes of the Adoption Act of 1970 was to permit the determination of the rights of parents independently of

144

■ Moreover, section 312 itself indicates that a parent may bring a petition for termination of the parental rights of the other parent only when adoption is contemplated. Section 312 provides: "A petition filed under this section shall contain an averment that the petitioner will assume custody of the child until such time as the child is adopted." 1 P.S. § 312 (Supp.1976). The requirement of an averment that petitioner will assume custody until the child is adopted belies appellant's argument that section 312 authorizes termination of parental rights when adoption is not contemplated.

■ . As its title suggests,[6] examination of the Adoption Act in its entirety reveals a singular concern with adoption proceedings. Provisions for involuntary termination of parental rights are contained, along with provisions for the voluntary relinquishment of parental rights and duties, within article III of the Act, entitled "Proceedings Prior to Petition to Adopt."[7] Consistent with this heading, the purpose of voluntary relinquishment and involuntary termination of parental rights is evidenced by section 321, which provides that the effect of either decree shall be to "extinguish the power or the right of such parent to object to or receive notice of adoption proceedings." 1 P.S. § 321 (Supp. 1976). We think it clear that the Legislature intended the

> adoption placement where the child was in the custody of an agency. *This was a salutory provision because it eliminated the need to involve prospective adopting parents in the proceeding to the detriment of the child.*"
>
> 58 D.&C.2d at 767. (emphasis supplied) An agency bringing a petition for termination of parental rights has as its continuing concern the eventual placement of the child for adoption when it finds a suitable parent or parents. By contrast, adoption may not be necessary or desirable for a child, like that of appellant, who is in the custody of a responsible and caring natural parent.

6. The title of a statute may be considered in the construction thereof. 1 Pa.C.S.A. § 1924 (Supp.1976).

7. Headings to articles may be used to aid in the construction of statutes. Id.

petition for involuntary termination of parental rights to be available solely as an aid to adoption.[8]

Appellant also argues that because a single person may adopt a child, she should be permitted to terminate the rights of her ex-husband in order to change the name of her child. Her argument is unpersuasive. A single person adopting a child is in a far different position than appellant. A single person may adopt a child only after the parental rights of the child's parents have been terminated or relinquished. Termination or relinquishment is required before the new parent-child relationship may be established. Appellant, on the other hand, has no need to take legal action to establish or maintain her parental relationship with her child. Although a child adopted by a single person will normally take the name of that person, this is merely ancillary to the adoption, not an end in itself. Nothing in the Adoption Act suggests that the involuntary termination procedures are intended to be used to effect a name change.

The purpose of the involuntary termination provisions of the Adoption Act is not to punish an ineffective or negligent parent, or provide a means for changing the surname of the child. Rather, the purpose of involuntary termination of parental rights is to dispense with the need

**8.** This conclusion is buttressed by consideration of the allocation of cases among the different divisions of the court of common pleas. All cases involving adoptions, or custody proceedings in connection with adoptions, must be brought within the orphans' court division of the court of common pleas. 20 Pa.C.S.A. § 711(7) and (8) (1975) (an exception, not relevant here, exists for Philadelphia. 20 Pa.C.S.A. § 713 (1976)). Appellant's petition fits neither category, and no other provision establishing the class of cases to be adjudicated within the orphans' court division of the court of common pleas is applicable. See 20 Pa.C.S.A. §§ 711–12 (1975). From an examination of the Adoption Act, it appears that the Legislature intended all proceedings under the Adoption Act, outside Philadelphia, to be brought in the orphans' court division. Appellant's position would require either expanding the class of cases to be adjudicated by the orphans' court division or lead to the unlikely conclusion that the Legislature intended a small class of proceedings under the Adoption Act to be brought in a different division of the court of common pleas than the more typical proceeding in connection with an adoption plan.

for parental consent to an adoption when, by choice or neglect, a parent has failed to meet the continuing needs of the child. See e. g., *In re Adoption of Orwick,* 464 Pa. 549, 347 A.2d 677 (1975); *In re Adoption of McCray,* 460 Pa. 210, 331 A.2d 652 (1975). Termination of parental rights permits the child and the adoptive parent or parents to establish a new parent-child relationship through adoption. Here, no new parent-child relationship is contemplated and thus the involuntary termination of the natural father's parental rights which appellant seeks is not permitted under the Adoption Act.

Decree affirmed. Each party to pay own costs.