## In the Matter of the Adoption of N.M.A.

*Joseph C. Korsak*, for natural mother.
*Ronald Perry*, for natural father.
*Clyde W. Vedder*, for child.

SHADLE, *P.J.*, June 3, 1983—

### STATEMENT OF CAUSE

N.M.A. is three years old, having been born on October 15, 1979. His parents are K.L.A. and M.J.A. The mother has filed herein a petition for the involuntary termination of the parental rights of the father, alleging that by conduct continuing for at least six months, he either has evidenced a purpose of relinquishing parental claim to the child or has refused or failed to perform parental duties.

The court appointed counsel for the child, and an evidentiary hearing was held. At the hearing, counsel for the father appeared and stated that the father did not contest the granting of the petition. However, counsel for the child opposed the petition. At the hearing the mother offered evidence in support of the petition. Counsel for the mother and for the child have submitted briefs on the issues hereinafter referred to.

## FINDINGS OF FACT

On the basis of the evidence submitted at the hearing, we find the following facts:

The parents were married to each other on June 4, 1977, but separated on October 7, 1980, and were divorced on January 28, 1981. The child has cotinued in the custody of the mother since birth. On an undisclosed date an order of support for the child of $25 per week was entered against the father, which apparently remains in effect, and which has been paid, most recently by a wage attachment, except for arrearages of $120.80 existing as of the date of the hearing. The father has had no contact or communication with the child since December, 1980, except for one visit arranged by the mother in February, 1981, although the support order has been paid, albeit involuntarily, to the present time.

On the basis of this evidence we find that the father by conduct continuing for a period of at least six months has both evidenced a settled purpose of relinquishing parental claim to the child and has refused or failed to perform parental duties.

The mother has not remarried. She testified that ultimately she would like to remarry and to have any such future husband adopt the child. However, she stated that she presently has no marriage plans, nor any plan to marry any specific person.

## ISSUES

The sole issue is whether the parental rights of a natural father may be terminated upon petition of the natural mother having custody of the child, when the mother has not remarried and has no

present plans for marriage or for adoption of the child by any specific person.

## DISCUSSION

Section 2512(a) of the Adoption Act of October 15, 1980, P.L. 934, 23 Pa.C.S.A. §2512(a), provides that a petition for involuntary termination of the rights of a parent with respect to a child may be filed by "(1) Either parent when termination is sought with respect to the other parent (or) (2) An agency."

These provisions were construed by the Supreme Court in interpreting the identical provisions of Section 312 of the Adoption Act of July 24, 1970, P.L. 620, 1 P.S. §312, the predecessor of Section 2512(a) of the present act. In In Re. Male Infant B.E., 474 Pa. 139, 377 A. 2d 153 (1977), a natural mother who was divorced from the natural father and had custody of the child, petitioned for the involuntary termination of the parental rights of the natural father. The court held that such petition could not be granted because the mother had no present plans for adoption of the child. The court there stated:

"We think it clear that the Legislature intended the petition for involuntary termination of parental rights to be available solely as an aid to adoption.

. . .

Termination of parental rights permits the child and the adoptive parent or parents to establish a new parent-child relationship through adoption. Here, no new parent-child relationship is contemplated and thus the involuntary termination of the natural father's parental rights which . . . (the mother) seeks is not permitted under the Adoption Act."

To the same effect, see In Re. Involuntary Termination of Parental Rights to J.R.C., 19 D. & C. 3d 719 (1981).

In Re. Male Infant B.E., supra, was cited with approval in In Re. Burns, 474 Pa. 615, 379 A. 2d 535 (1977). There, the Supreme Court held that, by contrast, the rights of one parent could be involuntarily terminated on petition of an *adoption agency*, as distinguished from the petition of the other parent, even though no particular adoption plan was imminent. The Burns decision now has been incorporated (not reversed, as erroneously stated by the Comment of the Joint State Government Commission to Section 2512), in subsection (b) of Section 2512 of the 1980 Adoption Act, supra, which now provides as follows:

"If the petitioner is an agency it shall not be required to aver that an adoption is presently contemplated nor that a person with a present intention to adopt exists."

We therefore conclude that the result in the present case is controlled by In Re. Male Infant B.E., supra, as confirmed by the exception added by the legislature in 1980 with respect to *only* a petition by an *adoption agency*, but not with respect to a petition by one *parent*.

The mother asserts two arguments to the contrary. One is that she does in fact "contemplate" adoption by any husband whom she might at some time marry in the future. This argument clearly is falacious. She presently has no plans to marry at all, nor is any such future husband presently in mind. More importantly, there is no way of knowing whether or when any such future husband could or would desire or seek to adopt the child.

The second argument advanced by the mother is that the present statute and the decisions above

cited violate the Federal Constitution by depriving her of equal protection in permitting an agency to obtain termination without a presently contemplated adoption, but preventing her as an individual parent from doing so. It immediately is apparent that the mother here has not in fact been deprived of any constitutional right. She continues to retain custody of the child and all her other parental rights. She also has the right at any time in the future to seek termination of the father's rights as and when she may in fact marry and any second husband in fact seeks to adopt the child. Preservation of the status quo does nothing more than postpone until that time the issue of whether the father's parental rights should be terminated and the child should be adopted.

The wisdom of denying one parent the right to terminate the rights of the other parent until an adoption presently is contemplated is demonstrated by considering the alternatives. A natural parent obviously cannot adopt his or her own child, since the parent-child relationship already exists. Unless and until an adoption by a third person is contemplated, permitting one parent to terminate the parental rights of the other could be motivated solely by caprice, retribution or vindictiveness, or even to deprive a custodial parent of custody. Although there is no indication that the petitioning mother is so motivated here, affording a parent such premature right of termination could produce such a result.

Of far greater significance would be the effect of present termination of the parental rights of the father on the facts here involved. Section 2511(b) of the present Adoption Act requires that "The court in terminating the rights of a parent shall give primary consideration to the needs and welfare of

the child." Section 2521(a) provides that a decree of involuntary termination of parental rights terminates "all rights and duties of a parent." As noted above, the child presently is the beneficiary of an existing order of support against the father. Were his parental rights now to be terminated, his duty to support the child likewise would cease. Notwithstanding that the mother might attempt to accept responsibility for the support of the child thereafter, there is no assurance that she would be financially able to do so. Thus, the mother would in effect "bargain away" the rights of the child to support. In addition, any rights of inheritance by the child from the father in the event of the death of the latter likewise would be terminated. Under all these circumstances, unless and until a third person is ready, willing and able to assume paternal responsibilities by adoption, it clearly would not be in the best interest of this small child to terminate the parent-child relationship with his father at this time.

## CONCLUSIONS OF LAW

(1) Involuntary termination of the parental rights of the father to the child here involved would not serve the needs and welfare of the child at this time.

(2) Because no adoption of the child presently is contemplated, the prayer of the petition of the mother to involuntarily terminate the parental rights of the father must be refused at this time, and such petition therefore must be dismissed.

## FINAL DECREE

And now, June 3, 1983, for the reasons set forth in the foregoing adjudication, the prayer of the peti-

tion of the mother to involuntarily terminate the parental rights of the father is refused at this time, and such petition therefore is dismissed.

This shall constitute a final decree to which no exceptions may be filed.

The clerk shall furnish copies hereof to all counsel listed above.