572 A.2d 223

### In re ADOPTION OF J.F.

### Appeal of G.F.

Superior Court of Pennsylvania.

Submitted Jan. 16, 1990.
Filed March 27, 1990.

40

Paul Sotak, Scranton, for appellant.

James Van Wie, Scranton, for appellee.

Peter C. Povanda, Scranton, for adoptive parents M.D. & M.D., participating party.

Before McEWEN, TAMILIA and FORD ELLIOTT, JJ.

TAMILIA, Judge:

Appellant/mother, G.F., and appellee/father, M.C.D., are the natural parents of J.F., who was born on June 9, 1976.[1] M.C.D. and his wife, M.D., filed a petition for involuntary termination of the parental rights of appellant on November 15, 1985, which the court granted on May 25, 1988. Appellant filed exceptions to the Order which were dismissed on June 14, 1989, and she now brings this appeal. A discussion of the background of this case and the people involved is necessary before addressing the issues raised.

J.F. was born out of wedlock while her father was still residing with his parents, J.F.'s paternal grandparents. When J.F. was nine months old, appellant relinquished physical custody to appellee and his parents but still main-

---

1. Appellee father testified this was the date of J.F.'s birth although appellant said the date of birth was September 9, 1976.

tained contact with her daughter. The child resided in her grandparents' home until October, 1982, even though appellee father married his present wife and moved out of his parents' residence in April, 1979. In June, 1981, appellant and paternal grandparents filed a petition for the involuntary termination of appellee father's parental rights. Appellant was willing at that time to voluntarily relinquish her parental rights to allow the paternal grandparents to adopt J.F. Their petition was denied, however, and in February, 1982, following a custody action by appellee father, a master issued a report and recommendation that legal custody be awarded to appellee father with liberal visitation rights to appellant and paternal grandparents. The paternal grandparents then filed a petition for blood testing to determine paternity of J.F. since they were claiming their son was not the natural father. The trial court dismissed this petition and this Court subsequently affirmed the trial court's Order. *Commonwealth ex rel M.D. v. M.D. and I.D.*, 343 Pa.Super. 621, 494 A.2d 488 (1985). Appellee father and his wife filed their petition for involuntary termination of parental rights on November 15, 1985, claiming appellant had evidenced a purpose of relinquishing her parental rights for at least six months. Hearings were held on three separate occasions in 1986 to dispose of the matter and the court eventually concluded appellant failed to perform parental duties for at least three years or take reasonable, affirmative action to maintain communication and relationship with her daughter. Finding appellant could have done much more to demonstrate a place of importance in her child's life under the circumstances and that her child's best interest was at stake, the court granted appellees' petition.

Appellant raises ten issues on appeal as follows:

1. Did the court err in allowing M.D. as petitioner and refusing to sequester her as a witness?

2. Did the court err in allowing both Attorney Povanda and Attorney Mazzoni the right to jump up as they

pleased throughout the proceeding and enter objections to the unfair disadvantage of respondent, G.F.?

3. Did the court err in not allowing relevant questions as to others' attempts to see J.F. and the denial of visits they had to see the said child?

4. Did the court err in not allowing relevant evidence to show bias and hostility of M.D. towards G.F.?

5. Did the court err in repeatedly allowing attorneys for petitioner to ask questions about respondent's effort to get the child returned to her?

6. Did the court err in it's opinion in that same was made upon capricious disbelief of competent and credible evidence and not based on competent evidence?

7. Did the court err as a matter of law in suggesting since respondent did not go to court to enforce her visitation rights this showed a settled purpose even though the case was not decided by the Superior Court of Pennsylvania filed to 3119 Philadelphia 1982 until March 15, 1985?

8. Are the opinion and order contrary to the law in that petitioners have not proved by clear and convincing evidence the statutory requirements have been met?

9. Are the opinion and order contrary to the evidence in that petitioners have not proved by clear and convincing evidence that the statutory requirements have been met?

10. Did the court err in that it failed to fully discuss why the best interest of the child demand the court to terminate the rights of respondent, G.F.?

All of appellant's issues claim trial court error in some form as it relates to the court's decision to terminate her parental rights. After reviewing the record, we find no error on the part of the trial court in making its determination and will address the issues simultaneously except for appellant's first issue which requires separate analysis.

▉▉▉ Appellant claims the court erred in allowing M.D. to join her husband as a petitioner and in refusing to sequester her as a witness. She argues that M.D. had no right, under 23 Pa.C.S. § 2512, to petition for the involun-

tary termination of appellant's parental rights. While we agree with appellant that M.D. was not a proper petitioning party, we find appellant suffered no prejudice by this error as M.D.'s husband, M.C.D., *was* a proper petitioning party.[2]

The statute provides as follows:

**§ 2512. Petition for involuntary termination.**

(a) **Who may file.**—A petition to terminate parental rights with respect to a child under the age of 18 years may be filed by any of the following:

(1) Either parent when termination is sought with respect to the other parent.

(2) An agency.

(3) The individual having custody or standing in loco parentis to the child and who has filed a report of intention to adopt required by section 2531 (relating to report of intention to adopt).

23 Pa.C.S. § 2512(a).

M.D. did not technically have custody of J.F., although her husband M.C.D. did. "Custody" in part (3) above (the section under which the court found M.D. to be a proper petitioning party) means legal custody, not merely *physical* custody. *In re Adoption of Crystal D.R.*, 331 Pa.Super. 501, 480 A.2d 1146 (1984). Therefore, it is of no consequence that J.F. resided with M.C.D. and M.D.; even foster parents who have cared for a child for years have no standing to petition for the involuntary termination of a parent's rights. *See id.* M.C.D., however, was a proper petitioner and could have advanced his petition without his wife. The presence of M.D.'s name on the petition did not in any way prejudice appellant. Also we point out that a parent may not petition to terminate the parental rights of the other parent unless it is established that there is an adoption contemplated by the spouse of the petitioner.

**2.** The trial court, in its Opinion Sur Exceptions, claims M.D. was a proper party petitioner because she resided with her husband and J.F. since her marriage. As reviewed below, this is not a basis for allowing M.D. to be a petitioner. .

### § 2512  Petition for involuntary termination

(b) **Contents.**—The petition shall set forth specifically those grounds and facts alleged as the basis for terminating parental rights.  The petition filed under this section shall also contain an averment that the petitioner will assume custody of the child *until such time as the child is adopted.*

(Emphasis added.)  *In re B.E.,* 474 Pa. 139, 377 A.2d 153 (1977), has construed this section to mean that a parent may not terminate the other parent's right unless adoption is contemplated.  In an indirect fashion, M.D.'s participation in this case satisfied a requirement that she was the intended adopter required by *In re B.E., supra.*

█  Additionally, we find appellant was not prejudiced by the court's refusal to sequester M.D. as a witness.  Appellant claims M.D. was allowed to hear her husband's testimony and thereby was in a position to conform her subsequent testimony to his.  We find the court did not err in refusing to sequester M.D. as she had every opportunity prior to the hearing to conform her testimony to her husband's if that was their intent.

The relevant statute sections governing involuntary termination of parental rights state:

### § 2511.  Grounds to involuntary termination

(a) **General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

.     .     .     .     .

(b) **Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, fur-

nishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(a)(1), (b).

The trial court found appellant showed a finality of purpose to relinquish her parental claim when, for three years, she failed to take reasonable, affirmative action to preserve her parental rights. The court concluded that appellees proved the statutory requirements by clear and convincing evidence and appellant failed to overcome this evidence.

Parental rights may not be terminated in the absence of evidence which is clear and convincing. In Pennsylvania, courts applying this standard have required that the evidence be "so clear, direct, weighty, and convincing as to enable the [factfinder] to come to a clear conviction without hesitancy, of the truth of the precise facts in issue."

Our scope of review in termination of parental rights cases is limited to a determination of whether the decision is supported by competent evidence. If our comprehensive review of the record does not reveal an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's findings, the order must stand.

*In re J.G.J., Jr.*, 367 Pa.Super. 425, 432, 532 A.2d 1218, 1220 (1987) (citations omitted).

We find the record supports the trial court's determination, therefore, we affirm the Order terminating appellant's parental rights. The testimony offered by appellant and her witnesses and appellees was, of course, contradictory. The trial court, however, found appellant's testimony lacked sincerity and credibility and we agree. Appellant testified she visited her daughter at the paternal grandparents' home until October of 1982 when J.F. moved to her father's home. From that date through 1986, appellant had no visits with her daughter although she had been granted visitation rights. Appellant detailed her attempts to see J.F. and claims she stopped at appellees' home once every month in

1983, 1984 and 1985 but never got to see her daughter because no one was home or no one answered the door. During this time, however, appellant never attempted legal action to enforce her visitation rights. Appellant claims this Court did not decide the issue of custody until March 15, 1985, so she could not take any legal action while the custody issue was pending. The issue before us at that time, however, was not to determine custody but to decide whether the trial court was correct in dismissing the paternal grandparents' petition for blood testing. Appellant could certainly have pursued legal action to enforce her visitation rights without waiting for a decision from this Court on the issue of blood testing.

Appellant's failure to take legal action is but one part of the evidence which, as a whole, indicates appellant did not take reasonable action to see her child which she could have, had she so desired. Even assuming appellees hindered appellant's attempts to contact J.F., as appellant testified, by not answering their door or shielding J.F. in public from seeing appellant, appellant was not faced with insurmountable obstacles or barriers that were out of her control.

A parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise "reasonable firmness" in resisting obstacles placed in the path of maintaining the parent-child relationship.

The law recognizes, however, that there are situations in which a custodial parent has deliberately created obstacles and has by devious means erected barriers intended to impede free communication and regular association between a noncustodial parent and his or her child. Therefore, it is incumbent upon a court, before it terminates the rights of a noncustodial parent, to consider carefully the noncustodial parent's explanation, if any, for his or her apparent neglect. Only where the totality of the circumstances demonstrates clearly and convincingly

that a parent has refused or failed to perform parental duties for a minimum period of six months may an order be entered terminating parental rights. The pertinent inquiry is not the degree of success a parent may have had in reaching the child, but whether, under the circumstances, the parent has utilized all available resources to preserve the parent-child relationship.

*In re Shives*, 363 Pa.Super. 225, 229–30, 525 A.2d 801, 803 (1987) (citations omitted).

We find, under the circumstances, appellant did not utilize all available resources to preserve the parent-child relationship and, in fact, has evidenced a purpose of giving up her parental rights.[3] We agree with the trial court that appellees have proven by clear and convincing evidence appellant failed to perform her parental responsibilities for at least six months. Upon finding the requirements of 23 Pa.C.S. § 2511 were met, the court was free to examine the evidence and determine the child's best interest. Here, the court determined the child needed a permanent, stable environment without the squabbling between appellant and appellees or appellees and the paternal grandparents. Pursuant to section 2511(b), the court was correct in making such a determination and we find no error occurred.

Order affirmed.

---

3. The trial court notes that most of the litigation over the child occurred between appellee father and his parents. Although appellant was joined with the paternal grandparents in the legal actions, it is apparent the grandparents were the ones more intimately involved in seeking custody, as appellant was willing to voluntarily terminate her parental rights to allow the grandparents to adopt J.F., should they succeed in terminating M.C.D.'s parental rights.