**In re Involuntary Termination of
Parental Rights K.D.M.A.**

*Norman Perlberger,* for petitioners.

SOKOLOVE, *J.,* March 1, 1993—This matter came before us on the petition of K.D.M., natural mother of

the subject child K.D.M.A., and J.M.M., the natural mother's brother and, therefore, the child's uncle, for the involuntary termination of the parental rights of the child's natural father, J.T.A. At a brief, uncontested hearing before us, the petitioners presented the natural father's consent to the termination of his parental rights and the proposed, underlying adoption, thereby converting the action into a confirmation of consent, the alternative relinquishment procedure set forth at 23 Pa.C.S. §2504. After the hearing, we allowed petitioners' counsel to submit legal authority for the requested relief. We have reviewed petitioners' memorandum of law and must deny their petition.

The relevant facts are few and simple. The petitioners seek the termination of the natural father's parental rights by way of the confirmation of his consent to the proposed adoption of the child by the maternal uncle, without the termination of the natural mother's parental rights. The proposed adoption, thus, would make a brother and sister the legal parents of the child.

The child was born on August 3, 1984. The natural parents were never married to each other. The child has always been in the physical custody of the natural mother and, at times, was in the natural father's physical custody as well. The natural father has been separated from the child and her mother since 1987 and is now married to someone else. The natural mother remains unmarried and has no plans to marry. The uncle, the proposed adopting father, has never had physical custody of the child. He is married and has one child with his wife. His wife would consent to his adoption of his sister's child.

The petitioners' memorandum alludes to many other facts which are not of record and are largely irrelevant. Since the natural father has signed a consent, we need not explore allegations supporting the grounds for the

involuntary termination of his parental rights. Moreover, our decision must be based on our interpretation of the law concerning this irregular adoption and is independent of the many extraneous facts used to play upon our sympathies.

The sole issue presented is whether we may terminate the parental rights of the child's natural father, while the natural mother retains her parental rights, so that the maternal uncle may adopt the child. We find that the suggested termination is precluded by the Adoption Act.

The termination of parental rights, whether voluntary or involuntary, is but a preliminary step in the adoption process. *In re B.E.,* 474 Pa. 139, 377 A.2d 153 (1977). Unless an agency will be assuming custody of the affected child, a parent's rights may only be terminated when an adoption is contemplated. *Id.,* 23 Pa.C.S. §2512(b). Adoption is a purely statutory right, unknown at the common law. *In re Adoption of E.M.A.,* 487 Pa. 152, 409 A.2d 10 (1979), *appeal dismissed,* 449 U.S. 802. Strict compliance with the legislative provisions of the Adoption Act is required to effect an adoption. *Id.* Exceptions to the Adoption Act may not be judicially created where the legislature did not see fit to create them. *Id.*

For the adoption of a minor child, the Adoption Act mandates either the termination of the existing parents' rights or the consensual relinquishment of the parents' rights. 23 Pa.C.S. §§2711(a), 2714. The Adoption Act specifies only one exception to these requirements:

"§2903. *Retention of parental status—*

"Whenever a parent consents to the adoption of his child by his spouse, the parent-child relationship between him and his child shall remain whether or not he is one of the petitioners in the adoption proceeding." 23 Pa.C.S. §2903.

In reliance upon this language, as stated in section 503 of the Adoption Act of 1970 and recodified in the current Adoption Act, the Supreme Court in *In re Adoption of E.M.A., supra,* held that a woman, who was not the spouse of the natural father, could not adopt the father's child when the father consented to the adoption but did not relinquish his parental rights. The court held that the so-called "qualified consent" executed by the father in that case was statutorily defective and that the savings clause of section 503, now 23 Pa.C.S. §2903, could not be applied to adoption by a non-spouse. In following this holding, the Superior Court, pursuant to the current Adoption Act, has more recently stated that "a parent may not petition to terminate the parental rights of the other parent unless it is established that there is an adoption contemplated by the *spouse* of the petitioner." *In re Adoption of J.F.,* 392 Pa. Super. 39, 44, 572 A.2d 223, 225 (1990). (emphasis added)

*In re Adoption of E.M.A., supra,* and *In re Adoption of J.F., supra,* control the outcome of this case. Petitioners attempt to distinguish *E.M.A.* by arguing that the consents in this case are not defective because the natural father's consent is "unqualified" and the natural mother is a petitioning party. This argument is obviously specious and promotes form over substance. The effect is exactly the same, whether the mother executes a "qualified consent" or joins in the adoption petition. In either event, she is asking to retain her parental rights while having her child adopted by someone who is not her spouse. She cannot truly adopt her own child, as she has no need to take legal action to establish or maintain her parental relationship with her child. *In re B.E., supra.* Her efforts are prohibited by a plain reading of the Adoption Act, in particular 23 Pa.C.S. §2905.

Petitioners contend that the uncle should be able to adopt the child as proposed because the Adoption Act states that "[a]ny individual may become an adopting parent," regardless of relationship. 23 Pa.C.S. §2312. Petitioners also allege that we indicated in an off-the-record conference before the hearing that we would not approve an adoption by an unmarried person. The first contention is fallacious, and the latter is patently untrue. The Adoption Act does indeed permit adoption by any individual, including an unmarried person, so long as the prerequisites of the Act are met. *In re Adoption of E.M.A., supra.* See *In re B.E., supra.* We have approved single-parent adoptions many times in appropriate cases. In this case, however, we must deny the application, not necessarily because the mother is single or the uncle is married to someone else, but because the other provisions of the Adoption Act prohibit the mother's maintenance of her parental status in conjunction with adoption by one who is not her spouse.

Petitioners refer us to cases in other jurisdictions where the homosexual partner of a natural parent has been permitted to adopt the natural parent's child. Although petitioners suggest that other courts in this Commonwealth have granted such adoptions, we have found no published opinion from Pennsylvania on this subject. The Adoption Act, as considered above, would not appear to allow it. Nonetheless, we believe that these cases are distinguishable from the matter at hand. The cases involving adoption of children by homosexual partners, such as *Matter of Adoption of Evan,* 583 N.Y.S.2d 977 (Sur. 1992) and the cases cited therein, concerned long-term partners functioning in an intact, family unit just as a married couple would. Indeed, the court in *Matter of Adoption of Evan, supra,* emphasized the stability and supportive relationship of the partners in finding the adoption to be in the

child's best interest. The purpose of adoption is to establish a new parent-child relationship within a family. *In re B.E., supra.* There is no such pretense of the creation of a family here. The proposed adopting father can never marry his sister, the natural mother. 23 Pa.C.S. §1304(e). Furthermore, he has never resided with the child and her mother and has no intention of doing so. He already has his own separate family. Under these circumstances, he cannot be this child's father.

Even were we to interpret the language of the Adoption Act more liberally, which we cannot, we would not countenance the adoption proposed here. Ultimately, termination of parental rights and adoption depend upon the court's discretion in assessing the needs and welfare of the child. 23 Pa.C.S. §§2511(b), 2902; *Matter of Adoption of David C.,* 479 Pa. 1, 387 A.2d 804 (1978). See official comment—1970 to 23 Pa.C.S. §2312. ("The increased flexibility is considered appropriate in view of the court's ultimate power to refuse an adoption petition if the circumstances ... so warrant.") The adoption proposed here would not promote the child's needs and welfare.

As we have noted, the proposed adoption will not create a new family for the child. It will not really give her a new father to replace the one whose rights would be terminated. In fact, the petitioners' primary aim appears to be the termination of the natural father's parental rights, not the adoption. The proposed adoption is not a true adoption as envisioned by our law. It is a subterfuge, designed not to establish a vital parent-child relationship but, rather, to superficially satisfy the legal necessity of an adoption to enable a termination. The petitioners are placing the cart before the horse. The termination of parental rights is meant only to facilitate an adoption. A sham adoption is not a means by which to achieve a termination, and it violates the concepts of 23 Pa.C.S. §2512(b) and *In re B.E., supra.*

The Supreme Court of Virginia in *Watson v. Shepard,* 229 S.E.2d 897 (1976) denied an adoption by parents who were separated and planning to divorce because it was not in the child's best interests. The court was concerned about the possibility of future discord and remarriages which would be confusing and disruptive to the child. We agree with the reasoning of the Virginia court. The adoption sought here would not enhance stability for the child and would lead to inherent difficulties were the natural mother to marry.

We cannot grant the termination of the natural father's parental rights in light of the improper and inappropriate adoption contemplated.

We enter the following

## CONCLUSIONS OF LAW

(1) This court has jurisdiction over the parties to and the subject matter of this adoption.

(2) The proposed termination of the natural father's parental rights is not permitted by the Adoption Act.

(3) The proposed termination of the natural father's parental rights would not promote the child's needs and welfare.

## DECREE NISI

And now, March 1, 1993, upon consideration of the petition of K.D.M. and J.M.M. for the termination of parental rights of J.T.A. concerning K.D.M.A. and after hearing and review of the petitioner's memorandum of law, it is hereby ordered and decreed that the petition is denied and dismissed. If no exceptions are filed within 10 days of this decree nisi, the decree nisi shall become the final decree of the court.