J-A26006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| C.M. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| S.A. | |
| Appellant | No. 777 MDA 2017 |

Appeal from the Order Entered April 4, 2017
In the Court of Common Pleas of Sullivan County
Civil Division at No(s): 2011-243

BEFORE:  BOWES, OLSON, AND RANSOM, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 18, 2018**

S.A. ("Father") appeals from the April 4, 2017 order entered in the Court of Common Pleas of Sullivan County which granted the petition filed by C.M. ("Mother") to involuntarily terminate his parental rights to their minor son, C.A.  As evidenced by the foregoing caption that is more appropriate in domestic relations court than orphans' court, the genesis of the instant appeal lies in custody litigation that Mother initiated against Father on October 18, 2011.  We reverse.

C.A. was born during August of 2011, in Philadelphia, Pennsylvania, as a result of Mother's intermittent relationship with Father.  N.T., 2/23/17, at 8, 10.  Father was present during birth, but the family never resided together.  *Id*. at 11-12.  Approximately one month after her son's birth, Mother moved

with C.A. to her parents' home in Sullivan County, Pennsylvania, and initiated the underlying custody litigation. *Id*. at 12-13. The trial court awarded Mother primary physical and legal custody of C.A. after Father failed to attend a preliminary custody conference. She has exercised sole custody of C.A. throughout his life. During May 2014 and July 2015, Father filed two unsuccessful motions to modify the 2011 custody order. The trial court dismissed the 2014 petition after Father failed to attend the ensuing custody conference. Father's later attempt was derailed on September 16, 2015, when Mother filed a petition to terminate his parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) and (a)(2).

In order to comply with § 2512(b), which has been interpreted as requiring a petitioning parent to identify the person with a present intention to adopt, Mother averred that her father, Charles Murray ("Grandfather") intended to adopt C.A. upon the termination of Father's parental rights. The termination hearing was held on February 23, 2017. Mother testified in support of the petition for termination and proffered one witness: Grandfather, who confirmed his intent to adopt C.A. if Father's parental rights were terminated. Grandfather, who C.A. refers to as "Pop Pop," has supported Mother and C.A. since 2012. N.T., 2/23/17, at 21, 59. During her testimony, Mother explained that she and Father rarely spoke to one another during the first three years after C.A.'s birth and that, while Father knew Grandfather's address, he remained absent from his son's life. *Id*. at 13, 18. She continued

that, except for a few visits prior to their relocation to Sullivan County, Father never visited with C.A., sent gifts, or provided Mother with financial support. *Id*. at 15, 20. Mother attested that, although she did not prohibit Father from visiting C.A. or interfere in the father-son relationship, Father neglected to interact with C.A., other than the few visits that occurred during 2012. *Id*. 16, 18, 19.

As it relates to the dispositive issues in this case, Grandfather testified that the primary reason for desiring to adopt C.A. was to change the child's surname, which the family had already altered informally. *Id*. at 60. During cross-examination, Grandfather added that he also intended for the adoption to formally ratify the fact that C.A. was part of his family. He explained, "I figure him part of the family and that's where he belongs, with us." *Id*. at 61. Noting the fact that he currently was C.A.'s *de facto* parent, Grandfather added, "I've done the same for him as I've done for my own children and I look at him as being one of them also." *Id*. at 62. Grandfather did not discuss the perspective of his wife ("Grandmother") on the proposed adoption, and Mother neglected to adduce any evidence on that topic. Father countered with testimony concerning the barriers that he claimed Mother erected to interfere with his relationship with C.A. Following the close of evidence, and confirmation of Father's paternity, the trial court granted Mother's petition to terminate Father's parental rights.

Father timely filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). He raises the following issues for our review:

> A. Whether the [trial court] committed an error of law and/or an abuse of discretion by failing to adequately consider [F]ather's evidence of his continued interest and attempts to have a relationship with the minor child and [M]other's efforts to keep him from maintaining a relationship with the minor child.
>
> B. Whether the [trial court] committed an error of law and/or abuse of discretion and ignored the evidence of record in erroneously finding that [F]ather's conduct for a period of at least six (6) months immediately preceding the filing of [M]other's petition has evidenced a settled purpose of relinquishing his parental claim to the minor child and/or has refused or failed to perform his parental duties, pursuant to 23 Pa.C.S. § 2511(a)(1).
>
> C. Whether the [trial court] committed an error of law and/or abuse of discretion and ignored the evidence of record in erroneously finding that the repeated and continued incapacity, abuse, neglect or refusal of the father has caused the minor child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by [F]ather, pursuant to 23 Pa.C.S. § 2511(a)(2).

Father's brief at 2-3. The court-appointed counsel for C.A. neglected to file a brief either supporting or contesting the termination of Father's parental rights pursuant to § 2511(a)(1).

Our standard of review is well settled.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law

or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Involuntary termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938. The sole purpose of the involuntary termination of parental rights is to facilitate adoption. *In re B.E.*, 377 A.2d 153, 155 (Pa. 1977). The measure is neither punitive nor a means for changing a child's surname. *Id*. As the party petitioning for termination of parental rights, Mother was required to "prove the statutory criteria for that termination by at least clear and convincing evidence." *In re T.R.,* 465 A.2d 642, 644 (Pa. 1983). Clear and convincing evidence is defined as "testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Matter of Sylvester,* 555 A.2d 1202, 1203–04 (Pa. 1989). Finally, "because adoption is a statutory right, we note that the parent seeking termination must strictly comply with all pertinent provisions of the Adoption Act in order for the adoption to be valid." *In re Adoption of M.R.D.*, 145 A.3d 1117, 1120 (Pa.Super. 2016). Nevertheless, as our Supreme Court recognized in *In re Adoption of M.R.D.*, *supra*, the trial court has discretion

pursuant to 23 Pa.C.S. § 2901, to excuse a party's inability to satisfy the statutory requirements for adoption upon cause shown.[1]

At the outset, we observe that Mother's petition to terminate Father's parental rights is not cognizable pursuant to § 2512(a) and (b) because, to the extent that Mother retains her parental rights, the proposed cessation of Father's parental rights was not in anticipation of a valid adoption decree that would establish a new parent-child relationship. Hence, for the reasons discussed *infra*, the order terminating Father's parental rights cannot stand.

Pursuant to § 2512(b), a private petition to involuntarily terminate a spouse's parental rights is cognizable only if the averred adoption is foreseeable. **In re E.M.I.**, 57 A.3d 1278, 1287 (Pa.Super. 2012). As our High Court observed forty years ago in discussing 1 P.S. § 312, the predecessor to § 2512, "a parent may bring a petition for termination of the parental rights of the other parent only when adoption is contemplated." **In re B.E.**, **supra** at 155; **see also In re Adoption of M.R.D.**, **supra** at 1120 (involuntary termination of parental rights is not permitted if no new parental-

_____

[1] The Adoption Act provides in pertinent part, "Unless the court for cause shown determines otherwise, no decree of adoption shall be entered unless . . . all other legal requirements have been met." 23 Pa.C.S. § 2901. As noted in the body of the memorandum, our Supreme Court interprets this provision as permitting "an adoption petition in circumstances where . . . the party seeking adoption is unable to meet the statutory requirements for adoption, but has demonstrated cause for his or her noncompliance with those requirements." **In re Adoption of M.R.D.**, 145 A.3d 1117, 1121 (Pa.Super. 2016).

child relationship is contemplated). Later, in **In re T.R.**, 465 A.2d 642, 644 n.10 (Pa. 1983), the Supreme Court observed that, the "singular concern of the Adoption Act" is to "establish a new 'parent-child relationship.'" Accordingly, it reasoned that the trial court is required to "consider, and not merely accept on its face," the putative adoptive parent's declaration of intent to adopt in order to confirm that the purpose of the involuntary termination of parental rights is genuine, *i.e.*, to establish a new parent-child relationship. **Id**. Moreover, our High Court's treatment of § 2903 prohibits grandparents from adopting their grandchildren unless the parental rights of **both** parents are terminated, at least not without a demonstration of "cause shown" pursuant to 23 Pa.C.S. § 2901, which the trial court neglected to perform herein. **In re Adoption of M.R.D.**, **supra** at 1120-1121.

Instantly, Mother's petition averred that Grandfather would adopt C.A. upon the involuntary termination of Father's parental rights. During the evidentiary hearing, she supported that averment with Grandfather's testimony regarding his intention to adopt C.A. and the concomitant reasons for that objective. In entering its termination decree, the trial court accepted this declaration on its face and ostensibly determined that Mother's averments and attendant evidence regarding the anticipated adoption satisfied § 2512(a) and (b) and the related case law. As we discuss *infra*, the trial court's implicit conclusion that Grandfather's anticipated adoption of C.A., and by necessity the termination of Father's parental rights, could proceed without the § 2903

analysis justifying why Mother should not be required to relinquish her rights is reversible error. *Id*. at 1129-1130.

Father does not raise this issue specifically. Indeed, as demonstrated by our reiteration of the statement of questions presented, he challenges the sufficiency of the evidence that Mother adduced to satisfy her burden of proof under § 2511(a)(1) and (a)(2). Nevertheless, in addressing the sufficiency of Mother's evidence, we must necessarily confront the procedural posture of the case in order to determine whether the evidence Mother adduced was, in fact, sufficient in parental termination actions between spouses. **In re Adoption of J.D.S.**, 763 A.2d 867 (Pa.Super. 2000).

In **In re Adoption of J.D.S.**, we determined that a petition for the involuntary termination of a father's parental rights was not cognizable because the prospective adoption by an estranged spouse was unlikely. Like Father in the case at bar, the father therein did not expressly challenge the procedural status of the involuntary termination case. Indeed, identical to Father herein, the father challenged the sufficiency of evidence underlying the trial court's findings under § 2511(a) and (b), and he leveled two procedural claims that are not relevant to our discussion. In confronting what this Court found to be the dispositive issue concerning the impossibility of the stepfather's proposed adoption following the collapse of his relationship with the children's mother, we deemed the legitimacy of the proposed adoption to be an essential component of the father's underlying challenge to the

sufficiency of the evidence. We explained our rationale as follows: "While the evidence could establish that father's conduct, or lack thereof, indicates 'a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties,' 23 Pa.C.S.A. § 2511(a)(1), this evidence becomes applicable only if the procedural status of the case is such that termination is permissible." *Id*. at 870-871. As the petitioners could not satisfy the statutory prerequisite for terminating the father's rights, *i.e.*, a valid adoption by the stepfather, we vacated the order terminating the father's parental rights.

The instant case aligns with **In re Adoption of J.D.S.** Comparable to the petitioners' evidence supporting the statutory grounds for termination in that case, the evidence that Mother adduced herein regarding Father's absence becomes relevant only if the Adoption Act can tolerate the purported adoption of C.A. by Grandfather. Therefore, as we determined in **In re Adoption of J.D.S.**, *supra*, in order to determine the sufficiency of Mother's evidence for termination under § 2511(a)(1), we must first confront whether termination of parental rights is permissible. Stated another way, the validity of the anticipated adoption is a prerequisite for adducing sufficient evidence for terminating parental rights pursuant to § 2511. **See In re Adoption of J.D.S.**, *supra* at 872 (since stepparent adoption was defeated by contemplated divorce, petitioner could not meet burden of establishing statutory prerequisite for termination of parental rights). Thus, to the extent

that Grandfather's anticipated adoption is invalid, Mother cannot sustain her burden of proving the grounds for the involuntary termination of Father's parental rights.

Next, we address the legitimacy of Grandfather's proposed adoption of C.A. under the circumstances of this case. Our High Court in **In re Adoption of M.R.D.**, **supra**, recently confronted a similar scenario involving the termination of parental rights to facilitate a prospective adoption by a grandparent when the other parent retained her parental rights. The Court concluded that the adoption was impermissible unless the mother established cause under § 2903 to waive the relinquishment requirement.

The relevant facts of that case were as follows. The mother of twin nine-year-old boys filed a petition to terminate the parental rights of the birth father, who was estranged from the family, maintained little contact with the children, and provided no financial support. The maternal grandfather assumed responsibility for the boys beyond that of a typical grandfather. Indeed, while he did not reside with the family, the grandfather effectively co-parented the children with the mother. The birth father eventually resurfaced and initiated custody proceedings. The mother countered by filing a petition to terminate the father's parental rights. Her petition identified the maternal grandfather as the party intending to adopt the boys and co-parent with Mother after the father's rights were terminated. The trial court granted the petition to terminate the father's parental rights and permitted the proposed

adoption to proceed. Sitting *en banc,* this Court affirmed. Essentially, we determined that the mother established "cause shown" pursuant to § 2901 to proceed with the proposed adoption while retaining her parental rights. ***In re Adoption of M.R.D.***, 128 A.3d 1249 (Pa.Super. 2015) (*en banc*), *reversed by* 145 A.3d 1117 (Pa. 2016).

In reversing that decision, the Pennsylvania Supreme Court first reiterated that the Adoption Act did not permit grandparent adoptions simply as a means to facilitate a termination of one parent's parental rights while retaining the rights of the other parent. Next, it outlined the sole exception to the rule, which permits a parent to establish cause under § 2901 to excuse the relinquishment requirement and proceed with the proposed adoption. The Court described the inquiry as follows: "Mother and Grandfather may show cause to waive the relinquishment requirement only if they can establish that permitting Grandfather to adopt Children while Mother retains her parental rights will promote a new family unit or that it is otherwise unnecessary to require Mother to relinquish her parental rights under the circumstances of this case." ***In re Adoption of M.R.D.***, 145 A.3d at 1128. Finally, applying this test to the facts of that case, our High Court determined that the mother could not demonstrate cause pursuant to § 2901.

It reasoned that the grandfather and the mother were not part of an intact cohabitating family unit, insofar as they were aligned in a vertical, parent-child relationship rather than a "committed, horizontal relationship

such as stepparents or same-sex partners." *Id*. at 1128. Moreover, the High Court stressed that, since the grandfather already performed co-parenting duties, no new parent-child relationship would be created. Indeed, the grandfather would continue to act as *de facto* parent. In sum, the Supreme Court found that "[a]doption does not foster a family unit under circumstances where, as here, the adopting party is already part of—and will continue to be part of—a family unit that is separate from the unit which he seeks to promote and join through adoption." *Id*.

The Supreme Court further concluded that, generally, allowing adoptions in this scenario, would invite the abuse of adoption proceedings for illegitimate purposes. It developed the following position,

> [P]ermitting Grandfather to adopt and co-parent Children with mother would . . . open the door for misuse of adoption proceedings by spiteful parents as a means to involuntarily terminate the rights of unwanted parents, potentially allowing grandparents, cousins, pastors, coaches, and a litany of other individuals who have a close relationship with a child to stand in as prospective adoptive parents so that termination may be achieved.

*Id*. at 1129.

Thus, the Court concluded that, while maternal grandfather's efforts in supporting his daughter and grandchildren were commendable, his "pre-existing and continuing close relationship with Children does not establish legal cause to excuse the requirement that Mother relinquish her parental rights under Section 2711 prior to the adoption." *Id*. While the Supreme

Court stopped short of proclaiming that any grandparent adoption in this situation is impermissible, it found that, absent proof that relinquishment was otherwise unnecessary, the mother was required to relinquish her parental rights to her sons in order to proceed with the proposed adoption by maternal grandfather and the attendant termination of Father's parental rights. Accordingly, the Supreme Court reversed our order affirming the termination of the father's parental rights. *Id*. at 1130.

Presently, Mother desired to retain her parental rights while petitioning that Father's rights be terminated pursuant to § 2511(a) and (b). Like the mother in *In re adoption of M.R.D.*, which was decided six months before the trial court terminated Father's parental rights herein, Mother proposed that Grandfather, with whom she, C.A., and Grandmother resided, adopt C.A. to formalize their existing parent-child relationship. However, in contrast to the facts of that case, Mother utterly ignored the requirement that she establish cause under § 2901 as to why she should not be required to relinquish her parental rights in order for the prospective adoption by Grandfather to be valid. Indeed, she failed to adduce any evidence relevant to that prerequisite, and more importantly, the trial court neglected to perform

the § 2901 analysis in accordance with the Supreme Court's holding in ***In re***

***adoption of M.R.D.***, ***supra***, prior to terminating Father's parental rights.[2]

------------------------------------------------

[2]  We observe that the facts and procedural history of this case and ***In re Adoption of M.R.D.*** are remarkably similar.  Both cases arise from custody disputes involving deadbeat fathers.  Similarly, the prospective adoptive grandfathers were married, enjoyed pre-existing parent-child relationships with their grandsons, and effectively stood in the shoes of the respective birth fathers in relation to co-parenting and providing for the family.  Hence, in either situation the proposed adoption would do nothing more than formalize the respective grandfathers' role as a *de facto* parent.

The only difference between the two cases is that Mother and C.A. reside with Grandfather while the children at issue in ***In re Adoption of M.R.D.*** did not live with their grandfather.  However, in light of the recognition that "cohabitation is not the *sine qua non* of a new family unit," and the fact that Mother and Grandfather continue to maintain a vertical parent-child relationship, the importance of cohabitation is diluted.  ***Id***. at 1123, *citing* ***In re Adoption of J.M.***, 991 A.2d 321 (Pa.Super. 2010).  Grandfather's cohabitation with Mother and C.A. does not negate the reality that the adoption would not produce anything beneficial that did not previously exist.

Furthermore, the cases are identical in that, if permitted in contravention of § 2901, both of the proposed grandfather adoptions would have disturbed the family dynamics with absurd results.  As the High Court explained in ***In re Adoption of M.R.D.***,

> such an arrangement would create confusing hybrid relationships within the family—Grandfather would be both Children's father and grandfather, Grandmother would be both a grandmother and a stepmother, and, more confusing still, because of Grandmother's status as a stepmother, Mother would be both a mother to Children and, technically, their stepsister. Further complicating matters, if Mother ever seeks to marry, the Act does not require Grandfather to terminate his parental rights in favor of Mother's spouse; thus, he could decide to remain Children's father and prevent Mother's spouse from having legal rights over Children.

***In re Adoption of M.R.D.***, ***supra*** at 1128-1129.

As Grandfather's proposed adoption is statutorily invalid absent the § 2901 demonstration of "cause shown," Father's rights cannot be terminated. *See In re Adoption of J.D.S.*, *supra* at 872 (petitioner could not establish statutory prerequisites for termination of parental rights when proposed adoption was unsustainable).

Order reversed.  Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 01/18/2018