J-A27039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.N.A., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.L.A., FATHER | : : : : : : | |
| | : | No. 1004 MDA 2024 |

Appeal from the Decree Entered May 14, 2024
In the Court of Common Pleas of Union County Civil Division at No(s):
23-8017

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:       **FILED JANUARY 31, 2025**

J.L.A. ("Father") appeals from the decree terminating his parental rights to A.N.A. ("Child"). Father maintains the trial court erred in terminating his parental rights because the petition for adoption referenced a putative stepparent and because there was "an indication" that A.T. ("Mother") prevented him from having contact with Child. We affirm.

In March 2023, Mother filed a petition for involuntary termination of Father's parental rights to Child (born in December 2016). In addition, Mother and K.F. ("Stepfather") filed a petition for adoption. Mother and Stepfather were not married at the time they filed the petition for adoption and in the petition Stepfather is described as the "future stepfather." Petition for Adoption, filed Mar. 1, 2023, at ¶ 2. At a January 2023 hearing, Father's counsel pointed out that Mother and Stepfather were not yet married, and argued that, where the potential adoptive parent was not married to the

biological parent, termination could not occur without the filing of an intention to adopt. N.T., Jan. 31, 2024, at 3. Counsel further noted that the court had not appointed counsel for Child. The trial court continued the hearing and appointed counsel for Child. *Id.* at 7. Mother and Stepfather were married in February 2024. N.T., May 9, 2024, at 11.

The hearing resumed in May 2024, and Stepfather, Mother, and Father testified. The court set forth the following facts:

> Except for a period during which he was out on bond, [Father] has been incarcerated or involuntarily committed by court order to a mental health facility since being charged with homicide in March 2019. He was found not guilty by reason of mental incapacity. [Father] has been diagnosed with schizophrenia and is receiving treatment for it; he remains involuntarily committed to a treatment facility at this time. [Father] testified that he expects at some point to be released to a group home, but does not have a release date.
>
> [Father] and [Mother] separated in 2017 when the child was around a year old. Since that time, [Father] has not sent any cards or letters to the child. He testified that he once sent a package and was told it was not received. However, he made no effort to make sure he had the right address for the child.
>
> [Father] testified that he requested photos of the child and received only one. [Father] testified that he has attempted to speak with child by phone and said that [Mother] tells him that the child is unavailable. [Mother] testified, and [Father] confirmed, that [Father] typically only called during the day when she is at work and the child is at school. The last time he called to speak with the child was for her birthday in December 2023; [Mother] testified that the child was at school when he called that day. [Mother] testified that he has not seen the child since January 2018. [Mother] testified that the child's relationship with [Father] is that of a stranger.

[Father] admitted that he had not ever reached out to [Mother] to see if she needed any money for the child, and he has not made his child support payments on time. [Mother] testified that [Father] is now thousands of dollars in arrears in child support.

[Mother] testified that she separated from [Father] in 2017. [Mother] has been in a relationship with [Stepfather] for five years and they married in February 2024. [Stepfather] testified positively regarding his relationship with the child and his intention to adopt the child if [Father's] parental rights were terminated. [Mother] also testified positively about [Stepfather's] relationship with the child and that the child calls him "Daddy."

Trial Court Opinion, filed June 24, 2024, at 3-4 (citations to record omitted).

The court granted the petition to terminate Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), 2511(a)(2), and 2511(b). Father filed an appeal.

Father raises the following issues:

1. Did the Trial Court err by terminating parental rights where the underlying petition for adoption improperly referenced a putative step-parent?

2. Did the Trial Court err by terminating parental rights as there was an indication that . . . Mother prevented [Father] from having contact with the child?

Father's Br. at 4 (suggested answers omitted).

In his first issue, Father argues that where, as here, the petition for involuntary termination of parental rights was filed simultaneously with a petition for adoption, the third party seeking adoption must issue a report of intention to adopt. He maintains that no such report was filed in this case. Father points out that when the petition was filed, Mother and Stepfather had not yet married, such that the petition for adoption was filed by a putative

- 3 -

stepfather, and the parties never amended the petition after their marriage. Father maintains that "[p]ermitting termination to move forward when the underlying request for adoption was and is fatally flawed is an error of law." *Id.* at 9.

Section 2531(a) of the Adoption Act governs reports of intention to adopt, stating, "Every person now having or hereafter receiving or retaining custody or physical care of any child for the purpose or with the intention of adopting a child under the age of 18 years shall report to the court in which the petition for adoption will be filed."[1] 23 Pa.C.S.A. § 2531(a). However, a

_____

[1] The statute also governs the content of the report:

> **(b) Contents.--**The report shall set forth:
>
> (1) The circumstances surrounding the persons receiving or retaining custody or physical care of the child, including the date upon which a preplacement investigation was concluded.
>
> (2) The name, sex, racial background, age, date and place of birth and religious affiliation of the child.
>
> (3) The name and address of the intermediary.
>
> (4) An itemized accounting of moneys and consideration paid or to be paid to the intermediary.
>
> (5) Whether the parent or parents whose parental rights are to be terminated have received counseling with respect to the termination and the alternatives thereto. If so, the report shall state the dates on which the counseling was provided and the name and address of the counselor or agency which provided the counseling.

*(Footnote Continued Next Page)*

report is not required when the individual has certain relationships with the child, including a stepchild-stepparent relationship. *Id.* at § 2531(c).

Section 2512 governs petitions for involuntary termination of parental rights, and provides that "[e]ither parent" may file a petition to terminate parental rights "when termination is sought with respect to the other parent." *Id.* at § 2512(a)(1). The petition shall include, among other things, "an averment that the petitioner will assume custody of the child until such time as the child is adopted." *Id.* at § 2512(b)(2). Further, where a parent files a petition to terminate the other parent's parental rights, the petition is cognizable only if the child's adoption is foreseeable:

> A petition to terminate a natural parent's parental rights, filed by one natural parent against the other under Section 2512(a)(1), is cognizable only if an adoption of the child is

---

> (6) The name, address and signature of the person or persons making the report. Immediately above the signature of the person or persons intending to adopt the child shall appear the following statement:
>
> > I acknowledge that I have been advised or know and understand that the birth father or putative father may revoke the consent to the adoption of this child within 30 days after the later of the birth of the child or the date he has executed the consent to an adoption and that the birth mother may revoke the consent to an adoption of this child within 30 days after the date she has executed the consent.
>
> (7) A copy of the preplacement report prepared pursuant to section 2530 (relating to home study and preplacement report).

23 Pa.C.S.A. § 2531(b).

> foreseeable. 23 Pa.C.S.A. § 2512(b); *In re Adoption of L.J.B.*, 610 Pa. 213, 228, 18 A.3d 1098, 1107 (2011). *See also In re B.E.*, 474 Pa. 139, 142, 377 A.2d 153, 154 (1977) (stating petition filed by one biological parent for involuntary termination of other biological parent's parental rights can survive only "in connection with a plan for adoption"; affirming denial of biological mother's petition for involuntary termination of biological father's parental rights, even upon proof of natural father's abandonment of child, absent mother's plan to have child adopted by step-parent or any other person).

*In re E.M.I.*, 57 A.3d 1278, 1285 (Pa.Super. 2012).

Here, Mother filed the petition to terminate parental rights. Further, although Mother and Stepfather were not married when they filed the petition for adoption, they were married prior to the hearing on the termination petition. Under these circumstances, we decline to find that Stepfather's status as "future stepfather" at the time Mother and Stepfather filed the petition for adoption impacts the validity of the decree terminating Father's parental rights. When the court granted termination, the adoption of Child by Stepfather was foreseeable.

In his second issue, Father maintains he had contact with Child by telephone and was "precluded from sending anything or exploring further contact because he did not know [Mother's] address." Father's Br. at 10. He points to Mother's testimony that she had been instructed that she did not have to provide her address. *Id.* Father maintains that the court "should not condone such behavior or reward the person who engages in such casual neglect." *Id.* at 11.

We review an order involuntarily terminating parental rights for an abuse of discretion. **In re G.M.S.**, 193 A.3d 395, 399 (Pa.Super. 2018). In termination cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." **In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013) (quoting **In re Adoption of S.P.**, 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." **In re Adoption of K.C.**, 199 A.3d 470, 473 (Pa.Super. 2018). We will reverse a termination order "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." **In re Adoption of S.P.**, 47 A.3d at 826.

The trial court concluded that the "evidence does not support the allegation that [Mother] prevented [Father] from having contact with [C]hild." Trial Ct. Op. at 6. This was not an abuse of discretion. Father made minimal efforts to maintain contact with Child, and never inquired about Mother's address. N.T., May 9, 2024, at 31 (when asked whether he asked Mother for her address, Father stating the "vibe" he got was that Mother "wasn't going to give [him] the address," and agreeing he did not try to obtain the address). The trial court did not err in concluding the evidence did not support a finding Mother prevented contact.

Decree affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>01/31/2025</u>