J-S85015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF: THE ADOPTION OF S.G.S. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.J.G. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1372 WDA 2017 |

Appeal from the Order August 21, 2017
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
No. 51 in Adoption, 2017

BEFORE:  BOWES, J., PANELLA, J., and STABILE, J.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 16, 2018**

A.J.G. ("Mother") appeals from the order entered on August 21, 2017, that denied her petition to involuntarily terminate the parental rights of T.E. ("Father") to their daughter, S.G.S.  We affirm.

The trial court summarized the pertinent facts as follows:

> The Child was born out of wedlock on April 9, 2012. The parties resided together in the small town of Corry, Pennsylvania, at the time of birth, but separated a few months later. From the time of separation until 2014, Mother and Child lived in a house next door to Father. Father saw the Child on a daily basis and exercised partial custody every other weekend, by mutual agreement.
>
> In 2014, Mother moved in with her boyfriend, also a resident of Corry, whom she subsequently married in September of 2016. At around the same time, Father became involved with his current wife. As a result of Mother's move in 2014, Father no longer had daily contact with the Child. However, his every other weekend partial custody schedule continued into 2015, without incident.

The timeline in 2015 and 2016 is disputed by the parties. Mother asserted that Father's partial custody changed to every Saturday with no overnights, in early 2015, and then ceased altogether in April of 2015, because Father was having domestic issues that made his home unsuitable for overnight visitation. Father contended that the every other weekend schedule lasted until the fall of 2015, when it changed to every Saturday due to his having transportation difficulties, and then ceased altogether in March or April of 2016, when the Child asked to remain with him overnight, and Mother refused. The parties agree that whenever their last custody interaction occurred, it generally concluded with Father stating he would pursue a formal custody arrangement in Court.

Trial Court Opinion, 10/13/17, at 2-3.

On May 8, 2017, Father filed a custody complaint seeking shared custody of S.G.S. Mother countered on June 8, 2017, by filing with the orphans' court a petition for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S. §2511(a)(1), a provision that relates to a parent's failure to perform parental duties for the preceding six months. Specifically, Mother alleged that Father "failed to have anything to do with [his daughter] since April 2015." Petition for Involuntary Termination of Parental Rights, 6/8/17, at unnumbered 3. She averred that her husband, D.G., intended to adopt S.G.S. upon the termination of Father's parental rights. The orphans' court appointed counsel to represent Father and S.G.S., respectively.

During the ensuing two-day hearing on July 25, and August 18, 2017, Mother testified in support of her assertion that Father had not interacted

with his daughter since April 2015.[1]  Father refuted Mother's timeline and countered that he continued to exercise physical custody of S.G.S. on alternating weekends until September or October of 2015, the date that Mother unilaterally deprived him of overnight custody.  Father testified that, until Spring 2016, he continued to exercise daytime custody every Saturday. In addition, he described four occasions between November 2016 and spring 2017, three of which occurred within the relevant six months period, where he briefly interacted with S.G.S. outside maternal grandfather's home.  On each occasion, S.G.S. either ran toward Father or embraced him before Mother or a family member whisked her away.  Father's wife, C.E., corroborated Father's account of his interactions with S.G.S. during 2016 and 2017.

On August 21, 2017, the orphans' court entered the above-captioned order denying Mother's petition to terminate Father's parental rights.

_____

[1] Mother neglected to present any evidence regarding the developmental, physical, and emotional needs and welfare of S.G.S. or the effect of permanently severing the bond the child shares with Father.  These omissions presented an alternate basis for the orphans' court to deny Mother's petition to terminate Father's parental rights.  However, mindful that § 2511(a) and (b) require a bifurcated analysis, and that the certified record sustained the orphans' court's conclusion that Mother failed to establish the statutory grounds for termination under 2511(a), we do not reach the remaining deficiencies relating to subsection (b).  **See In re B.C.**, 36 A.3d 601, 606 (Pa.Super. 2012) ("The initial focus is on the conduct of the parent.  . . .  If the trial court determines that the parent's conduct warrants termination under section 2511(a), it must engage in an analysis of the best interests of the child under Section 2511(b)").

Mother timely filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). She raises the following issues for our review, which we revise for clarity:

> 1.      Whether the orphans' court erred in failing to find that Father failed to perform his parental duties for a period of at least six months prior to the filing of Mother's petition to terminate parental rights.
>
> 2.      Whether the orphans' court erred in finding that Father's ephemeral contacts with S.G.S. during the six months immediately preceding the date Mother filed her petition constituted an effort to remain actively involved in his daughter's life.
>
> 3.      Whether the orphans' court disregarded the facts concerning Father's two-year failure to utilize the court system to preserve his custodial rights.

Mother's brief at 10-11.[2]  We address the issues collectively.

> Our standard of review is well settled.
>
> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The trial court's decision, however, should not be reversed merely because the record would support a different result.  We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

_____

[2] While S.G.S.'s court-appointed counsel declined to file an independent brief, she joined the arguments raised in Father's brief.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Involuntary termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938. The sole purpose of the involuntary termination of parental rights is to facilitate adoption. *In re B.E.*, 377 A.2d 153, 155 (Pa. 1977). The measure is not punitive. *Id*. As the party petitioning for termination of parental rights, Mother was required to "prove the statutory criteria for that termination by at least clear and convincing evidence." *In re T.R.,* 465 A.2d 642, 644 (Pa. 1983). Clear and convincing evidence is defined as "testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Matter of Sylvester*, 555 A.2d 1202, 1203–04 (Pa. 1989).

As noted, Mother invoked the statutory grounds to terminate Father's parental rights pursuant to § 2511(a)(1) and (b), which provide as follows.

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
> >
> > . . . .
>
> **(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the

developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1) and (b).

With respect to § 2511(a)(1), this Court has explained,

A court may terminate parental rights under Section 2511(a)(1) where the parent demonstrates a settled purpose to relinquish parental claim to a child or fails to perform parental duties for at least the six months prior to the filing of the termination petition. The court should consider the entire background of the case[.]

*In re A.S.*, 11 A.3d 473, 482 (Pa.Super. 2010) (citations omitted). While the statute targets the six months immediately preceding the filing of the petition to terminate, the trial court must consider the entire history of the case and not apply the six-month statutory period mechanically. *In re K.Z.S.*, 946 A.2d 753, 758 (Pa.Super. 2008).

Accordingly, Mother was required to produce clear and convincing evidence of Father's conduct that satisfied either one of the two requirements outlined in § 2511(a)(1), *i.e.*, a settled purpose of relinquishing parental claim or a failure to perform parental duties. *In re D.J.S.*, 737 A.2d 283, 285 (Pa.Super. 1999). Our Supreme Court has noted that parental duty under § 2511(a)(1) includes "an affirmative duty to love, protect and support" the child and "to make an effort to maintain

- 6 -

communication with that child." ***In re Adoption of S.P.***, 47 A.3d 817, 828 (Pa. 2012). When the parent's fulfillment of those duties is made more difficult by impediments, "we must inquire whether the parent has utilized those resources at his or her command . . . in continuing a close relationship with the child." ***Id***.

Upon review of the evidence, the orphans' court concluded that Mother was unable to demonstrate by clear and convincing evidence that Father failed to perform his parental duties or that he established a settled purpose of relinquishing his parental rights. Specifically, the court reasoned,

> This is not a case where the parent was never present in a child's life, or without explanation disappeared from a child's life. Rather, Father and Mother allowed circumstances to develop such that Father essentially took a back seat to Mother and step–father when it came to providing for the Child's needs on a day to day basis.
>
> But that does not necessarily lead to the conclusion Mother draws[—]that Father lost interest in the Child, or abandoned his place of importance in her life. To the contrary, given that Father and Child had become accustomed to limited time together, it is not unreasonable to conclude that their parent-child bond remained relatively strong despite only occasional contact. Each time Father saw the Child within six months of Mother's IVT Petition, he reached out to her, and the Child recognized him as her father, and interacted with him affectionately. When Father purportedly learned that relinquishment of his parental rights was a topic of discussion in support enforcement proceedings, he acted swiftly to preserve his rights by filing a custody action with the Court. In fact, Father's Custody Complaint was filed **a full month before** Mother filed her IVT Petition.

Trial Court Opinion, 10/13/17, at 7 (emphasis in original). Significantly, the court observed that, unlike Mother's bare testimony that Father abandoned

S.G.S. during 2015, Father provided corroborating evidence from a sequestered witness to confirm the dates and quality of his interactions with S.G.S. during 2016 and 2017. *Id*. at 4.

Mother's first complaint assails the orphans' court's role as the ultimate arbiter of fact. Contending that Father abandoned contact with S.G.S. during April 2015, rather than 2016, Mother argues that the trial court's credibility determination in Father's favor is unwarranted. In essence, Mother discounts C.E.'s corroborating testimony as the product of pretrial discussions about the case. Mother's response to the trial court's reference to C.E.'s testimony illustrates this position categorically, "For goodness sakes, she is his wife! It is ludicrous to think they never spoke about what was going on in the case and that their testimony would be similar based on those talks." Mother's brief at 4.

In the alternative, Mother contends that, presuming Father had transitory contact with S.G.S. during November 2016, and March, April, and May of 2017, those four isolated interactions were insignificant. She opined, "It is unbelievable that the Court would find these contacts to mean that . . . Father remained 'actively involved in the child's life.'" *Id*. at 16. Indeed, Mother argues that Father's chance encounters with S.G.S. in the maternal grandfather's front yard evinced neither Father's commitment to maintaining communication with his daughter nor his pledge to satisfy the child's need for love, protection, guidance, or support, which our Supreme Court

observed "cannot be met by merely a passive interest[.]" *Id*. at 17 (quoting

*In Re Burns*, 379 A.2d 535, 540 (Pa.1977)).

The certified record sustains the trial court's decision. First, as it

relates to Father's contacts with S.G.S. during 2016 and 2017, and his

attempts to overcome Mother's impediments to communication, the orphans'

court explained its findings of fact as follows:

> Father's testimony and timeline were more credible than Mother's, as Mother appeared at times unsure about her chronology, and lacked specificity about how and when the parties' custodial relationship changed over time. Further, the testimony of both parties was more consistent with Father missing only one Christmas with the Child, Father having testified in detail about his efforts to give the Child a card and gift in December of 2016, while Mother only generally denied that any contact was made by Father after April of 2015.
>
> Through the summer and fall of 2016, Father credibly testified that he made regular attempts to contact Mother by telephone, text message and Facebook, to discuss resuming a custody schedule, none of which efforts produced a response from Mother. Beginning in December of 2016, within six months immediately preceding the filing of the IVT Petition, Father saw the Child on four occasions. The first was shortly before Christmas, when the Father observed Mother and Child outside the maternal grandfather's home, down the street from his own residence. Father approached Mother and asked for time with the Child over Christmas, and indicated that he had a card and gift for Child. The Child gave the Father a hug, and Mother carried the Child into the grandfather's house without a definitive response. [Three more interactions occurred during March and April with similar circumstances.] Each time, the child saw Father and ran to him for an embrace.

Trial Court Opinion, 10/13/17, at 3-4.

Mother does not complain that the orphans' court's determination was

unsupported by the record or even that the underlying evidence of record

was so unreliable as to make the court's considerations pure conjecture. Instead, she essentially entreats that this Court reweigh her and Father's evidence regarding the timeline of Father's contacts with S.G.S. in order to reach a conclusion in her favor. Contrary to Mother's protestations, however, she cannot dictate the weight that the orphans' court attributed to the evidence or its consideration of any single factor. Indeed, as we explained in *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa.Super. 2013), "it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." We simply will not revisit the trial court's factual findings which are based on the certified record in order to reassess the weight of the evidence. *J.R.M. v J.E.A.*, 647 33 A.3d 647, 650 (Pa.Super. 2011) ("with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand"). Having found that the certified record sustains the orphans' court's findings of fact relating to Father's proposed timeline and his interactions with S.G.S. during 2016 and 2017, we do not disturb them.

Accordingly, the record belies Mother's assertion that Father failed to perform parental duties or demonstrated a settled purpose of relinquishing his parental rights. To the contrary, Father not only endeavored to establish contact with S.G.S. through Mother's telephone, text message and social

media accounts, when Mother neglected to respond, he circumvented that obstacle and interacted with his daughter on four occasions.

The most convincing evidence of Father's desire to fulfill his parental obligations is the fact that he filed a custody complaint against Mother seeking shared custody. Mother attempts to discount Father's efforts by implying that the custody litigation was an eleventh-hour ploy designed by Father to evade the termination of his parental rights. Indeed, § 2511(b) provides that the orphans' court must disregard a parents efforts to alleviate the grounds for terminating parental rights pursuant to, *inter alia*, §2511(a)(1), that were initiated **after** receiving notice of the petition to terminate parental rights. However, the record in the case at bar establishes that Father retained private counsel and filed the custody complaint against Mother at least one month **before** Mother responded with her petition to terminate his parental rights. Even if we give Mother the benefit of the doubt and presume that Father anticipated Mother's desire to terminate his parental rights, a notion that Father ardently contests, the acknowledged fact remains that Father's custody action preceded Mother's termination petition by one month. Hence, the exclusionary provision outlined in § 2511(b) is patently inapplicable herein, and Mother's attempt to invoke that principle through thinly-veiled insinuation is unconvincing.

Next, in relation to Mother's alternative argument that Father's intermittent interactions with S.G.S. during 2016 and 2017 were

insignificant, the record supports the court's determination that the brief encounters were meaningful. First, the record reveals that Father and S.G.S. maintained a close relationship when Mother and Father shared separate halves of a duplex between 2012 and 2014. Recall that, during this period Father exercised overnight physical custody on alternating weekends and interacted with S.G.S. daily. In fact, during the evidentiary hearing, Mother complained that Father would visit his daughter spontaneously. She stated, "any time we were outside or he would walk over and talk into my windows and doors." N.T., 7/25/17, at 23. The father-daughter relationship continued after Mother and S.G.S. moved from the home during May or June of 2014. Indeed, although the parties disputed how long Father continued to interact with S.G.S. regularly, the trial court determined that Father's custodial periods persisted until April 2016, when Father grew tired of Mother's unilateral imposition of conditions and restrictions and informed her that he intended to file a custody action. While Father did not act on that threat until thirteen months later, in the interim, he periodically communicated with S.G.S. while she was visiting her maternal grandfather. The parent-child relationship endured this period of restricted contact, as evidenced by S.G.S.'s affectionate responses to Father during their fleeting exchanges.

Given the above evidence, we can find no basis to disturb the orphans' court's finding that "their parent-child bond remained relatively strong

despite only occasional contact." Hence, we reject Mother's contention that Father's periodic exchanges with S.G.S. during late 2016 and early 2017 were manifestly inadequate to demonstrate Father's commitment to his daughter. No relief is due.

As the record sustains the orphans' courts' determination that Father not only maintained limited contact with his daughter, but also initiated custody proceedings against Mother during the six months preceding the date she filed her petition to involuntarily terminate his parental rights pursuant to § 2511(a)(1), the trial court did not err in denying Mother's petition.

Order affirmed.


Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: _3/16/2018_