**[J-35-2025]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | |
|---|---|
| IN RE: M.L.R., A MINOR | : No. 2 MAP 2025 |
| | : |
| | : Appeal from the Order of the |
| APPEAL OF: E.L.R., MOTHER AND | : Superior Court at No. 623 EDA |
| M.L.R., A MINOR | : 2024, entered on October 9, 2024, |
| | : Vacating the Decree of the |
| | : Montgomery County Court of |
| | : Common Pleas, Orphans' Court |
| | : Division, at No. 2022-A0133, entered |
| | : on January 26, 2024. |
| | : |
| | : ARGUED: September 11, 2025 |

**OPINION**

**CHIEF JUSTICE TODD**                     **DECIDED: February 18, 2026**

We granted review in the instant case to consider whether Appellant E.L.R. ("Mother"), who sought to involuntarily terminate the parental rights of Appellee M.V.D. ("Father") to their child, M.L.R. ("Child") under the Adoption Act (the "Act"),[1] must be provided the opportunity to demonstrate cause under Section 2901 of the Act as to why she should be excused from the Act's requirement that she relinquish her own parental rights when there is no contemplated adoption of Child. As we conclude that Section 2901's "cause shown" exception to the relinquishment requirement is applicable only when there is a contemplated adoption of a child, we hold that Mother's petition for termination of Father's parental rights was not cognizable under the Act, and that the trial

---

[1] 23 Pa.C.S. §§ 2101 *et seq*.

court erred when it terminated Father's parental rights in the instant case. Accordingly, we affirm the order of the Superior Court, which reversed the order of the trial court.

We begin with a brief discussion of petitions for involuntary termination of parental rights under the Act. Section 2511 of the Act sets forth eleven separate grounds for involuntary termination, which, relevant herein, include the following:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> (11) The parent is required to register as a sexual offender under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders) or I (relating to continued registration of sexual offenders) or to register with a sexual offender registry in another jurisdiction or foreign country.

*Id.* § 2511(a)(1), (a)(2), (a)(11) (footnote omitted).

Pursuant to Section 2512(a), a petition to terminate the parental rights of a child under the age of 18 may be filed by: (1) either parent, when termination is sought with respect to the other parent; (2) an agency; (3) an individual who has custody or stands *in loco parentis* to the child and who has filed a report of intention to adopt as required by Section 2531; or (4) an attorney representing a child or a guardian ad litem representing a child who has been adjudicated dependent under 42 Pa.C.S. § 6341(c) (relating to adjudication). *See* 23 Pa.C.S. § 2512(a).

Section 2512(b) of the Act sets forth the required contents of a petition for involuntary termination. First, "[t]he petition shall set forth specifically those grounds and facts alleged as the basis for terminating parental rights." *Id.* § 2512(b)(1). Further, "[e]xcept as provided in paragraph (3), the petition filed under this section shall also contain an averment *that the petitioner will assume custody of the child until such time as the child is adopted.*" *Id.* § 2512(b)(2) (emphasis added).[2]

Relevant to the instant case, this latter subsection requires that a petitioning parent "demonstrate that an adoption of the child is anticipated in order for the termination petition to be cognizable." *In re Adoption of M.R.D.*, 145 A.3d 1117, 1120 (Pa. 2016). Further, Section 2711(a)(3) requires that the parent seeking termination consent to the anticipated adoption.[3] *See id.* Finally, "absent a qualifying provision appearing elsewhere in the Adoption Act, it is clear . . . that a legal parent must relinquish his parental rights in order to consent to the adoption of his child by a non-spouse." *In re Adoption of R.B.F.*, 803 A.2d 1195, 1199 (Pa. 2002); *M.R.D.*, 145 A.3d at 1120.

The Act provides two limited exceptions to the relinquishment requirement. First, under Section 2512(b)(3), a petitioner "shall not be required to aver that an adoption is presently contemplated nor that a person with a present intention to adopt exists," if the petitioner is a parent seeking to terminate the parental rights to a child who was conceived as a result of rape or incest. 23 Pa.C.S. § 2512(b)(3). Additionally, pursuant to Section 2903, a parent who consents to the adoption of his child by his spouse is not required to

---

[2] Subsection 2512(c) pertains to petitions which do not identify the father of the child.

[3] Section 2711(a)(2) provides: "[e]xcept as otherwise provided in this part, consent to an adoption shall be required of . . . [t]he spouse of the adopting parent, unless they join in the adoption petition." *Id.* § 2711(a)(2). Subsection 2711(d)(1) sets forth the requirements for consent, which includes the following statement by the parent: "I understand that by signing this consent I indicate my intent to permanently give up all rights to this child." *Id.* § 2711(d)(1).

relinquish their own parental rights to the child.[4]  Lastly, and the focus of this case, Section 2901 of the Act allows a court to enter a decree of adoption in cases where the natural parent has not relinquished their own parental rights for "cause shown," if the remaining legal requirements have been met.[5]

With this overview in mind, we turn to the facts of this case.  Mother and Father (collectively, "Parents") were married in 2018, and Child, who is their only offspring, was born in December 2019.  Shortly before Child's birth, Father was arrested and charged with possession of child pornography based on conduct which occurred in December 2018, and for failing to register as a sexual offender in Pennsylvania ("Pennsylvania charges").  Parents divorced in 2020, at which time they were awarded shared legal custody of Child.  Mother was awarded primary physical custody, while Father was awarded supervised physical custody.

In 2021, while the Pennsylvania charges were pending, Father was arrested in New Jersey for failing to register as a sexual offender in that state, resulting in his incarceration from June 2021 through January 2022.  On August 16, 2021, while Father was incarcerated, Parents entered into a stipulated custody order which provided that Mother would have sole legal and physical custody of Child during any period in which Father was incarcerated.  In February 2022, Father pled guilty to the Pennsylvania

---

[4] Section 2903 provides:  "[w]henever a parent consents to the adoption of his child by his spouse, the parent-child relationship between him and his child shall remain whether or not he is one of the petitioners in the adoption proceeding."  *Id.* § 2903.

[5] Section 2901 provides:  "[u]nless the court for cause shown determines otherwise, no decree of adoption shall be entered unless the natural parent or parents' rights have been terminated . . . and all other legal requirements have been met."  *Id.* § 2901.

charges, and was sentenced to 5 to 15 years imprisonment, and lifetime registration as a sexual offender.[6]

On August 17, 2022, Mother filed a petition for the involuntary termination of Father's parental rights ("Petition") pursuant to subsections (a)(1), (a)(2), and (a)(11) of Section 2511 of the Adoption Act. Notably, Mother's Petition did not include an assertion that an adoption of Child was contemplated, in accordance with Subsection 2512(b)(2), and she did not indicate that she intended to relinquish her own parental rights.

Nevertheless, following a three-day hearing, the trial court granted Mother's Petition and filed a decree involuntarily terminating Father's parental rights pursuant to subsections 2511(a)(1) and (2).[7] The court acknowledged that Mother could not satisfy the requirements of Subsection 2512(b)(2) because she did not intend to relinquish her parental rights to Child. However, the court concluded that Mother met the "cause shown" exception set forth in Section 2901, which provides, in relevant part: "*Unless the court for cause shown determines otherwise*, no decree of adoption shall be entered unless the natural parent or parents' rights have been terminated . . . and all other legal requirements have been met." *Id.* § 2901 (emphasis added).

In this respect, the trial court opined:

> This Court cannot think of a scenario that is more appropriate for applying the "cause shown" exception. The legislature has made it clear that father must register as a lifetime sex offender. This lifetime registration requirement was enacted to protect children. It seems preposterous that the legislature

---

[6] Additionally, in 2009, prior to Parents' marriage, Father pled guilty to unlawful contact with a minor−prostitution, for which he served a 25-month sentence of incarceration and was ordered to register as a sex offender.

[7] Having found that Mother demonstrated grounds for termination under Section 2511(b)(1) and (2), the court then concluded that termination was warranted under Section 2511(b) (requiring a court to give "primary consideration to the developmental, physical and emotional needs and welfare of the child" when terminating parental rights).

was only seeking to protect those children who are not related to the offender. If mother had remarried and this petition involved a stepparent adoption, father would not be able to challenge on the basis of the "contemplated adoption" requirement. Mother should not be penalized or restricted from protecting her child simply because she is a single parent who does not currently have a partner who wants to adopt. . . . This Court finds that preventing a mother from terminating the father's parental rights unless she remarries and her new spouse wants to adopt her child or puts the child up for adoption by terminating her own rights is ludicrous.

It is clear to this Court that the termination of father's parental rights given his criminal offenses and admitted proclivities will promote the best interests of this child. Therefore, this Court finds that mother has met the requirements of [Sections 2512 and 2901] and has proved by clear and convincing evidence that this matter is an exception for "cause shown" and termination is appropriate under these circumstances.

Trial Court Opinion, 1/26/24, at 9-10.

Father appealed to the Superior Court, asserting that the trial court erred in relying on Section 2901 to excuse Mother from Section 2512(b)(2)'s requirement that her Petition contain an averment that an adoption of Child was contemplated. In a unanimous, unpublished memorandum opinion, the Superior Court vacated the trial court's decree involuntarily terminating Father's parental rights. *In re M.L.R.*, 2024 WL 4449487 (Pa. Super. filed Oct. 9, 2024) (unpublished memorandum).

Initially, the Superior Court observed that Section 2512(b)(2) requires that the petition of a parent seeking to terminate the parental rights of the child's other parent contain an averment that the petitioner will assume custody of the child until such time as the child is adopted, and, further, that "the petitioning parent must demonstrate that an adoption of the child is anticipated in order for the termination petition to be cognizable." *Id.* at *3 (citing *In re Adoption of M.E.L.*, 298 A.3d 118, 121 (Pa. 2023)). The court further recognized that Section 2711 provides that "the parent seeking termination must consent

to the contemplated adoption of the at-issue child, which entails relinquishing his or her own parental rights." *Id.* at *3 n.4.

The Superior Court acknowledged that Section 2901 of the Act allows a petitioner to demonstrate, by clear and convincing evidence, why, in a particular case, he or she cannot meet the statutory requirements. *Id.* at *4. The court noted, however, that it has interpreted Section 2901 as requiring that there be "a *legal impediment* to the party's strict fulfillment of the Adoption Act's statutory requirements." *Id.* (emphasis original, citation omitted). The court concluded that, in the instant case, Mother did not offer any reason why she "cannot abide by the adoption requirement at § 2512(b) aside from her understandable unwillingness to relinquish custody of [Child]," and, further, that the trial court "also did not identify any particular impediment that would prevent Mother from abiding by § 2512(b) aside from her refusal to do so." *Id.*

The Superior Court stressed that it was "not unsympathetic to Mother's position," and was "sensitive to the plight of single parents who receive no assistance or benefit from an absent parent, but are precluded from seeking termination . . . because they do not have a spouse." *Id.* at *5 (citation omitted). However, the court explained that, "regardless of the wisdom" of the requirement that a petitioner must relinquish their own parental rights, this Court has made clear that "the judiciary is bound by the provisions of the Adoption Act, including the spousal and relinquishment requirements, until such time as they are revisited by the General Assembly." *Id.* (quoting *In re Adoption of J.M.B.*, 308 A.3d 1262, 1276 (Pa. Super. 2024)). Thus, the court determined that the trial court erred in finding, pursuant to Section 2901, that Mother was excused from strict compliance with the relinquishment requirement, and thus it held that Mother's Petition seeking the involuntary termination of Father's parental rights was not cognizable. Accordingly, the Superior Court vacated the trial court's decree granting Mother's Petition.

We granted Mother's petition for allowance of appeal to determine whether the Superior Court, in holding Mother's Petition for the involuntary termination of Father's parental rights was not cognizable, "misapplied and misapprehended the essential holding" of this Court's decision in *M.E.L*, and failed to recognize that, pursuant to Section 2901 of the Act, a trial court may use its "measured discretion to override the Adoption Act's legal requirements in a particular case upon a showing of cause." *In re: M.L.R.,* 332 A.3d 27 (Pa. filed Jan. 6, 2025) (order).

Preliminarily, we note that, when reviewing a trial court's order regarding a petition for termination of parental rights, an appellate court must apply an abuse of discretion standard. *In re Adoption of S.P.,* 47 A.3d 817, 826 (Pa. 2012). This standard of review requires an appellate court to accept the findings of fact and the credibility determinations of the trial court, so long as they are supported by the record. *Id.* If the factual findings are supported by the record, an appellate court's review is limited to whether the trial court made an error of law or abused its discretion. *Id.* An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; rather, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As Mother challenges the Superior Court's application of our decision in *M.E.L.*, and further asks us to reconsider that decision, we begin with a brief discussion of that case, as well as the decisions that informed our holding therein.

In *R.B.F.*, *supra*, in two separate cases, parents sought to allow their same-sex domestic partners to adopt their children. However, they could not meet the statutory requirements for adoption because the parents did not intend to relinquish their own parental rights as required by Section 2711. The parents also could not establish an exception to the relinquishment requirement under Section 2903 – which, as discussed

above, allows a parent to retain their parental rights when consenting to the adoption of their child by their spouse – because, at the time, the parents and their partners were not legally permitted to marry. Thus, the trial court summarily dismissed the petitions for adoption, and the Superior Court affirmed.

On appeal, the parties argued that, pursuant to Section 2901, they should be allowed to show cause to excuse them from the relinquishment requirement because they were not legally permitted to marry and, thus, "as in a stepparent adoption, the only means to guarantee family integrity ordinarily achieved through termination of existing legal parent's rights would be through preservation of that parent's rights." *R.B.F.*, 803 A.2d at 1201 (emphasis omitted).

We first recognized that, because adoption is purely a statutory right, in order to effect an adoption, strict compliance with the legislative provisions of the Adoption Act is required. We then determined that "there is no reasonable construction of the Section 2901 'cause shown' language other than to conclude that it permits a petitioner to demonstrate why, in a particular case, he or she cannot meet the statutory requirements." *Id.* at 1201-02. We opined that a contrary interpretation of the "cause shown" provision "would command an absurd result as the Adoption Act does not expressly preclude same-sex partners from adopting." *Id.* at 1202 (citing 1 Pa.C.S. § 1922(1) (General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable)). Thus, we held that the legal parents must be afforded the opportunity to establish, by clear and convincing evidence, cause as to why they should not be required to relinquish their own parental rights in order to allow their same-sex partners to adopt their children, when the legal parents and their partners could not legally marry.

Subsequently, in *M.R.D.*, *supra*, we determined that a mother who sought to terminate the parental rights of her children's father, and retain her own parental rights

while allowing her own father to adopt her children, could not demonstrate cause shown under Section 2901 so as to excuse her from strict compliance with the relinquishment requirement. The mother and her father ("grandfather") had filed a petition for the involuntary termination of the children's father's parental rights. In order to comply with Section 2512(b)'s requirement that the termination petition be filed in contemplation of an adoption, the mother and grandfather averred that the grandfather would adopt the children and co-parent with the mother. The trial court granted the petition to involuntarily terminate the father's parental rights, and the Superior Court affirmed.

In reversing the lower courts' decisions, this Court reiterated that the "purpose behind the termination or relinquishment of an existing parent's rights prior to an adoption is to facilitate a 'new parent-child relationship' between the child and the adoptive parent," 145 A.3d at 1127-28 (quoting *In re B.E.*, 377 A.2d 153, 156 (Pa. 1977)), and to protect "the integrity and stability of the new family unit." *Id.* at 1128 (citations omitted). We explained:

> In the standard adoption case, termination and relinquishment of parental rights is necessary so that the child may be adopted by, and form new bonds with, his or her new family, unencumbered by the former legal parents. By contrast, in second-parent adoption cases in which the relinquishment of a parent's rights is not required − i.e., stepparent adoptions and adoptions by same-sex couples − relinquishment of the parent's rights is unnecessary, and indeed damaging. In such cases, the parent and the prospective adoptive parent are committed partners − that is, they are involved in a horizontal relationship, are equals as between each other, and are equals with respect to the child. Adoption in such circumstances allows the prospective adoptive parent to create a new parent-child relationship with the legal parent's child and a family unit *together with* the co-parent to whom he or she is committed. Thus, because the legal parent and prospective parent in second-parent adoption cases are part of the same family unit, the relinquishment requirement undermines, rather than promotes, family stability.

*Id.* (emphasis original).

We observed that these concerns did not exist in *M.R.D.* because the mother and the grandfather were not part of an "intact family unit;" and the grandfather would not live with the mother and her children. *Id.* Additionally, we noted the potential for "unique complications," such as the creation of "hybrid relationships," and the ramifications if the mother ever sought to remarry, in which case the grandfather, by refusing to relinquish his new parental rights, could prevent the mother's future husband from adopting the children. *Id.* Finally, we expressed concern that allowing the grandfather to adopt his daughter's children could

> open the door for misuse of adoption proceedings by spiteful parents as a means to involuntarily terminate the rights of unwanted parents . . . . Given that the "complete and irrevocable termination of parental rights is one of the most serious and severe steps a court can take," *In re Bowman,* [666 A.2d 274, 280 (Pa. 1995)], we must ensure that we do not open the floodgates to such gamesmanship.

*Id.* at 1129.

Thus, although we recognized in *M.R.D.* that "societal norms pertaining to what constitutes a family are constantly evolving," and we commended the grandfather for "stepping up" to provide for his daughter's children, we found there was no "legal cause to excuse" the relinquishment requirement. *Id.* Accordingly, because there was not a valid anticipated adoption, we held that the petition for the involuntary termination of the father's parental rights filed by mother and grandfather was not cognizable.

Notably, our decision in *M.R.D.* generated several separate writings by the members of this Court. The majority opinion, which was drafted by this author, was joined by Chief Justice Saylor, and Justices Dougherty and Wecht. However, this author penned a special concurrence urging the legislature to revisit the adoption and relinquishment requirements of the Act in light of the evolving concept of family, which read, in part:

It is clear that the relinquishment requirement for termination was designed to promote two-parent families. However, in the nearly 35 years since this requirement was enacted, the concept of family has evolved—and continues to evolve—in today's society, and there are situations where, in my view, it is unfair to require a single parent to have a spouse or partner as a prerequisite to seeking the termination of the rights of the child's other legal, but absent, parent. Indeed, there are many families comprised of only a parent and a child where the single parent is fully capable of raising and providing for his or her child, and where the absent parent provides no benefit to − or worse, is a dark cloud over − the child.

*Id.* at 1133 (Todd, J., specially concurring).

The late Chief Justice Baer, then Justice Baer, authored a concurring opinion, wherein he disagreed with the majority's suggestion that the "test" for establishing cause under Section 2901 is whether the contemplated adoption will "promote a new family unit." *Id.* at 1130-31 (Baer, J., concurring). Justice Baer observed that such language is not present in Section 2901, or in any other provision of the Act. He further expressed his disagreement with this author's special concurrence urging the legislature to revisit the relinquishment requirements so as to allow one parent to terminate the other parent's parental rights without the requisite contemplated adoption:

The special concurrence's request seems to overlook that the interests of children supersede the interest of parents. In light of the benefits that come with two parents, even when one is absent, I believe our legislature has adopted a child-focused statute which should not be changed.

In my view, the law is loath to leave children with only one parent, as children derive no benefit from having a parent's rights terminated, unless a new, committed parent is ready, willing and able to take that terminated parent's place. Terminating a parent's rights, even one who is currently uninvolved in the child's life, removes the child's ability to inherit from and through that parent as well as the potential of future emotional and financial support from that parent. Terminating an uninvolved parent's rights does not remedy

> any harm caused by that parent's absence in the child's life. The only benefit of terminating a non-involved parent's rights without substituting a new parent is arguably to the involved parent: it removes the involved parent's fear that the non-involved parent will have a change of heart and want a relationship with the child (which may, in the long term, benefit the child); it removes the risk to the involved parent of having to litigate child custody; it dispels the involved parent's feeling that his or her efforts are underappreciated in the eyes of the law, etc.

*Id.* at 1132.

Finally, Justice Wecht wrote a separate concurring opinion, emphasizing that "[t]ermination of parental rights is an extreme and last-ditch measure. Its finality is striking. It is emphatically not a tool to be deployed in custody disputes." *Id.* at 1133-34 (Wecht, J., concurring). Thus, while agreeing with this author's observation that "there are many families comprised of only a parent and a child, where the single parent is fully capable of raising and providing for his or her child," Justice Wecht disagreed with the suggestion that the General Assembly "revisit the Adoption Act's requirement that a parent filing a [termination of parental rights] petition demonstrate that an adoption is contemplated." *Id.* at 1134.

Finally, and most recently, we considered Section 2901's "cause shown" language in *M.E.L.* Therein, a mother filed a petition to involuntarily terminate the parental rights of her child's biological father. At the time she filed the petition, the mother was in a stable, long-term relationship with another partner, but the mother and her partner were not married, and had no plans to wed in the future. Nevertheless, in conjunction with mother's petition, mother's partner filed notice of his attempt to adopt M.E.L. The trial court granted the mother's petition and terminated the parental rights of M.E.L.'s biological father.

On appeal, the Superior Court vacated the trial court's order, finding that the mother failed to strictly comply with Section 2711(d)'s relinquishment requirement. The

Superior Court recognized that, under Section 2903, a parent may retain their parental rights when consenting to the adoption of their biological child by a spouse, but noted that Section 2903 did not apply because the mother and her partner were not married.

The court further acknowledged that, pursuant to Section 2901, a trial court has "discretion to grant an adoption in limited circumstances where the party cannot meet the statutory requirements but has demonstrated cause for the noncompliance." *In re Adoption of M.E.L*, 2022 WL 4113115 at *3. Observing that the trial court had not considered whether the mother established cause under Section 2901 as to why she could not comply with the relinquishment requirement, the Superior Court remanded the case to the trial court for further consideration. This Court granted review to determine whether the Superior Court erred in remanding the matter for a determination regarding whether the mother could establish the cause exception under Section 2901 when the proposed adoptive parent was a non-spouse.

In a majority opinion by this author, we affirmed the Superior Court's decision, we emphasized:

> Critically, unlike in the context of an agency petition, a petition of a parent seeking to terminate the rights of the child's other parent must contain "an averment that the petitioner will assume custody of the child *until such time as the child is adopted.*" *Id.* § 2512(b) (emphasis added). In other words, "the petitioning parent must demonstrate that an adoption of the child is anticipated in order for the termination petition to be cognizable." *In re Adoption of M.R.D.,* [145 A.3d at 1120] (citations omitted). We have explained that "[t]he purpose of the involuntary termination provisions of the Adoption Act is not to punish an ineffective or negligent parent, or provide a means for changing the surname of the child," but instead "to dispense with the need for parental consent to an adoption when, by choice or neglect, a parent has failed to meet the continuing needs of the child." *In re B.E.,* [377 A.2d at 156].

*M.E.L.*, 298 A.3d at 121.

We then considered Section 2901 of the Act, which, as noted above, provides, in relevant part, "[u]nless the court for cause shown determines otherwise, no decree of adoption shall be entered unless the natural parent or parents' rights have been terminated . . . and all other legal requirements have been met." 23 Pa.C.S. § 2901. Observing that the Act does not define the phrase "cause shown," we looked to our prior decisions interpreting the same phrase, including *R.B.F. and M.R.D.*, and concluded:

> [T]o satisfy the cause exception to relinquishment under Section 2901 two things must be established. A party must first show why he or she cannot meet the statutory requirements for adoption. This is consistent with the plain language of the statute, which provides that, "[u]nless the court for cause shown determines otherwise, no decree of adoption shall be entered *unless . . . all other legal requirements have been met.*" 23 Pa.C.S. § 2901 (emphasis added). In both *R.B.F.* and *M.R.D.*, the parties seeking to adopt were legally unable to marry and, thus, could not satisfy the Act's marriage requirement. Upon this showing, the party may *then* appeal to the court's discretion by demonstrating with clear and convincing evidence why the purpose of Section 2711(d) would nevertheless be fulfilled or unnecessary in their case, despite the parties' inability to fulfill the statutory requirements.

*M.E.L.*, 298 A.3d at 127 (emphasis original).

With respect to the mother's claim that she established cause under Section 2901 because the proposed adoption of M.E.L. by her partner would facilitate a new parent-child relationship between her child and her partner, we found that mother put "the proverbial cart before the horse," noting that

> before she may demonstrate that the proposed adoption satisfies the purpose underlying Section 2711(d), she must, as an initial matter, explain why she is *unable* to meet the statutory requirements for adoption. Indeed, while our Court's analysis in *R.B.F.* and *M.R.D.* centered more directly on the second portion of the inquiry − *i.e.*, whether the parties could establish that the proposed adoptions in those cases rendered the relinquishment requirement under Section 2711(d) unnecessary − that was because there was no

question that the domestic partners in *R.B.F.*, and the mother and grandfather in *M.R.D.*, were legally prohibited from marrying and, thus, could not satisfy the statutory requirements for adoption. By contrast, although Mother concedes that she and Partner do not satisfy the statutory requirements for adoption in this case because they do not intend to marry at this time, she does not allege any legal impediment preventing her and Partner from doing so, and, as noted, the orphans' court made no inquiry on this subject.

. . . Permitting a parent, such as Mother, to simply waive the relinquishment requirement in circumstances where she offers her long-term partner as an adoptive resource, but does not first demonstrate why they cannot marry, would allow the "cause shown" exception to swallow the rule, as that parent could proceed with the adoption even if there were no legal impediment to marrying the prospective adoptive parent, rendering the spousal requirements effectively optional, and the stepparent exception to relinquishment under Section 2903 largely unnecessary.

Critically, however, the General Assembly did not intend for the spousal requirement for adoption to be merely aspirational. To the contrary, the relinquishment requirement was designed to promote the General Assembly's clear goal of promoting adoptions by a spouse, in the context of an intact marriage. As then-Justice, later Chief Justice, Baer aptly articulated in *M.R.D.*, this goal is "rooted in the belief that children benefit from permanency," the best indicator of which "is to have children parented by two parents in a permanent relationship — a marriage." *M.R.D.*, 145 A.3d at 1131-32 (Baer, J., concurring).

Moreover, as a practical matter, excusing the relinquishment requirement and allowing the adoption to proceed without first requiring Mother to demonstrate why she and Partner are unable to marry could lead to abuse by spiteful parents seeking to terminate the rights of unwanted parents, a scenario we cautioned against in *M.R.D. See id.* at 1129 (warning about the potential for misuse in adoption proceedings "by spiteful parents as a means to involuntarily terminate the rights of unwanted parents, potentially allowing grandparents, cousins, pastors, coaches, and a litany of other individuals who have a close relationship with a child to stand in as prospective adoptive parents so that termination may be achieved."). In addition, broadly excusing the relinquishment

requirement for non-stepparent adoptions would distort the operation of Section 5326, which, as noted, terminates the custody rights of grandparents (and great-grandparents) over their grandchildren where the proposed adoption is by an individual other than a stepparent.

*Id.* at 128-29.

Again, this Court recognized that "the relinquishment requirement for adoption and termination of another parent's rights over a child may be seen by some as anachronistic in this day and age, particularly given the changing notion of what it means to be 'family,'" but we observed that "the General Assembly has not revisited these provisions, and they remain the law." *Id.* at 129. Accordingly, we held in *M.E.L.* that, prior to terminating the father's parental rights, the trial court should have evaluated whether the mother had established cause under Section 2901 as to why she and her partner could not marry, such that she should be excused from the relinquishment requirement, and we affirmed the Superior Court's order remanding to the orphans' court for consideration of that issue.

Justice Wecht authored a concurring and dissenting opinion in *M.E.L.*, wherein he agreed that the Superior Court's order should be affirmed, but disagreed with the majority's interpretation of the Act. Initially, Justice Wecht disagreed with the majority's "two-part framework that all but forecloses an adoption by a parent's partner if the couple chooses not to marry." *Id.* at 130 (Wecht, J., concurring and dissenting). He further suggested that the majority disregarded the explicit words of Section 2901, in which the General Assembly used "broad, open-ended language . . . to vest the trial court with discretion to deviate from statutory requirements for cause shown." *Id.* at 135. In Justice Wecht's view, "[t]he legal requirements excusable by Section 2901 extend beyond" the requirements of parental consent and relinquishment of parental rights, and "any of the statutory requirements may be excused 'for cause shown.'" *Id.*

Justice Wecht further opined that the majority's interpretation of Sections 2901 and 2903 in *M.E.L.* was "incongruent" with our decisions in *R.B.F.* and *M.R.D.*, in that our

decision in *R.B.F.* was not based on the partner's inability to marry, and the mother in *M.R.D.* "sought to manufacture an adoption by the children's maternal grandfather," whereas the parties in *M.E.L.* sought to create "a legally recognized parent-child relationship" between the non-biological parent and the child. *Id.* at 137. Nevertheless, regarding the disposition of the case, Justice Wecht found that the trial court "precipitously terminated Father's rights" without considering whether the mother and her partner established that partner's proposed adoption of the child could proceed in accordance with the statutory requirements, despite the fact that they were not married, and, thus, concluded a remand was appropriate. *Id.* at 139.

With this precedent in mind, we turn to the arguments of the parties. Mother asserts that the Superior Court below erred in relying on this Court's construction of Section 2512(b) in *M.E.L.*, and, specifically, our statement that, "[i]n other words, 'the petitioning parent must demonstrate that an adoption of the child is anticipated in order for the termination petition to be cognizable." *M.E.L.*, 298 A.3d at 121 (quoting *M.R.D.*, 145 A.3d at 1120). *See* Mother's Brief at 27. As is evident from her brief, however, Mother's challenge is based less on the Superior Court's reliance on *M.E.L.*, but is directed more toward *M.E.L.* itself.

Indeed, Mother contends that the language of Section 2512(b) does not require that "an adoption must be imminently planned or currently contemplated," *id.* at 27 (emphasis omitted), and she argues that this Court, in *M.E.L.*, improperly "changed the words of the Adoption Act when [we] stated and *added* these words to the statute, even though such words do not exist[.]" *Id.* at 26-27 (emphasis added); *see also* Mother's Brief at 28 (asserting that, in *M.E.L.*, this Court "reinvented the words of the statute").

Mother further submits that, in deciding *M.E.L.*, we erred in relying on *M.R.D.* because, in *M.R.D.*, "this Court was concerned with conflicting and confusing horizontal

and vertical relationships, the child not living in a family unit with his would-be adopter, his grandfather, and custody gamesmanship." *Id.* at 27. Mother notes that none of these concerns exist in the instant case.

Mother also suggests that, in *M.E.L.*, we "misinterpreted part of [our] own rationale of *R.B.F.*," because we recognized in *R.B.F.* that trial courts "have discretion to permit an adoption, based upon the best interest of the child and the circumstances of the case, without requiring the existing parent to terminate his/her own parental rights." *Id.* at 30-31. Indeed, Mother argues that reinstating the trial court's decision in her favor would be consistent with our ruling in *R.B.F.*

Additionally, in arguing that this Court erroneously interpreted the Act in *M.E.L.*, Mother relies on Justice Wecht's concurring and dissenting opinion in that case, and submits that the General Assembly's intent in enacting Section 2901 was to allow a trial court, which is familiar with the parties to a case, "to use its measured discretion to override the Adoption Act's legal requirements in a particular case upon a showing of cause." *Id.* at 28-29 (citing *M.E.L.*, 298 A.3d at 130 (Wecht, J., concurring & dissenting)). Mother avers that the legislature did not suggest that the "cause shown" exception "is limited to only circumstances where the petitioner 'cannot' meet the statutory requirements," and she alleges that the "newly created requirement that a petitioner must first establish that she is unable to meet the statutory requirements," amounts to "yet another *M.E.L.* creation by this Honorable Court," which is absent from the statute itself. *Id.* at 29 (emphasis omitted)

With regard to the construction of Section 2901, Mother contends that this Court should adopt a "reasonably measured, public policy oriented, child centered approach" that is consistent with the Adoption Act, and which affords trial courts the "necessary discretion to scrutinize each non-conforming termination or adoption case, to develop a

record in that regard, and then to determine whether a sufficient showing of cause has been made to justify the relief requested keeping the child's needs and welfare as the guiding touchstone." *Id.* at 31-32.

In Mother's view, the trial court properly exercised such discretion in the instant case, in light of Father's status as a lifetime sexual offender registrant, as well as the evidence that satisfied the requirements of the plain language of Section 2512(b) that she "would maintain her care and loving custody of the child, forever, whether the child was ever adopted or not, and certainly through the time the child was adopted, if ever an adoption of the child was to be perfected." *Id.* at 28.

In sum, Mother maintains that *M.E.L.* was wrongly decided, and she urges us to "review, revisit, and re-interpret the Adoption Act and [our decision in *M.E.L.*]," Mother's Brief at 20, so as to permit trial courts to exercise their "measured and careful discretion in determining 'cause shown' consistent with Section 2901 of the Adoption Act." *Id.* at 17 (emphasis omitted). In this regard, Mother posits that "adherence to precedent is not 'an inexorable command,'" *id.* at 22 (citation omitted), highlighting the United States Supreme Court's decision in *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022), which overturned *Roe v. Wade*, 410 U.S. 112 (1973).

Like Mother, counsel for Child maintains that the trial court properly exercised its discretion in determining that Mother established cause shown under Section 2901 so as to excuse her from "averring an adoption is contemplated for Child." Child's Brief at 13. Echoing Justice Wecht's position in his concurring and dissenting opinion in *M.E.L.*, counsel for Child emphasizes that the intent of Section 2901 is to vest the trial court with discretion to excuse non-compliance with *any* of the statutory requirements for cause shown, not simply the requirements of parental consent and relinquishment of parental rights. In this respect, counsel for Child submits:

> Mother's good cause shown includes that adoption is not necessary as she has been the sole parent, sole provider, sole caregiver, sole protector, and sole educator to Child for his entire life. By requiring Mother to identify a partner to co-parent the child minimizes her role as a successful and loving single parent and sole provider while preserving an absentee father's parental rights until an unknown time. Such an outrageous and disparaging result flies in the face of the Adoption Act and the tenants of permanency and stability. Such an unconscionable result turns the Adoption Act upside-down by rewarding the unfit and absentee parent for doing nothing and punishing the present parent for nurturing and taking care of the child every day.

*Id.* at 14.

Counsel for Child adds that Mother's motive in seeking termination of father's parental rights is not "to punish or retaliate against Father for being an ineffective and absentee father," but, rather, is "simply for the protection of Child and his future embarrassment and shame because of his Father's status as a convicted criminal for crimes against innocent children." *Id.* at 14-15. Counsel for Child argues that Mother "only wants to keep her son safe and protect him from harm, predictable shame, fear, embarrassment, and trauma." *Id.* at 15.

Father responds by observing that this Court has repeatedly held that a parent's petition for involuntary termination of the other parent's parental rights to a child is cognizable under Section 2512 of the Act only if the petitioning party demonstrates "that an adoption of the child is anticipated." Father's Brief at 9; *see M.E.L.*, 298 A.3d at 121; *M.R.D.*, 145 A.3d at 1120; *In re: T.S.M.*, 71 A.3d 251 (Pa. 2013); *In re Adoption of L.J.B.*, 18 A.3d 1098, 1107-08 n.11 (Pa. 2011) (plurality). Father stresses that Mother "neither alleged nor proved that an adoption of [Child] was contemplated or pending." Father's Brief at 10. Father also highlights that the exception set forth in Section 2512(b) for petitions filed by agencies, or where the child at issue was conceived as a result of rape

or incest, does not apply.  For these reasons, Father avers that Mother's termination petition was not cognizable.

Moreover, Father maintains that the Superior Court correctly interpreted and applied this Court's case law, including *M.E.L.*, regarding the "cause shown" exception. Specifically, Father contends that the Section 2901 exception applies only in the context of a contemplated adoption, and where there is a legal impediment to strict compliance with the spousal adoption or relinquishment requirements of the Act.  In this regard, he reiterates that the purpose behind the termination or relinquishment of an existing parent's rights prior to an adoption is to facilitate a new parent-child relationship, and to protect the integrity and stability of the new family unit.

Father claims that Mother did not even attempt to plead or prove that there is a legal impediment to her compliance with the Act's requirements, and, instead, simply believes that a petitioning parent should not be required to prove that an adoption is contemplated, a position that would entail a reversal of our precedent, including our decision in *M.E.L.*, less than two years after it was decided.

Father further argues that "reinterpreting" our precedent in the manner advocated by Mother would invade the province of the General Assembly.  *See* Father's Brief at 17 (noting that, in *M.E.L.*, we held that "[i]nterpreting Section 2901 so as to require Mother to demonstrate first why she is unable to meet the statutory requirements for adoption . . . is consistent with our principles of statutory construction").  Indeed, Father observes that, in 2020, the General Assembly amended the Adoption Act by adding Section 2514, which dispenses with the adoption requirement if the child at issue was conceived as a result of rape or incest.  Father posits that, through the 2020 amendment, the General Assembly demonstrated "that it understands exactly how this Court has interpreted the relevant sections of the Adoption Act, and knows exactly how to amend the Act when it

wishes to do so to clearly indicate when one parent may petition to terminate another parent's rights in the absence of an adoption." Father's Brief at 20. Father suggests that the legislature's "failure to amend any other sections of the Adoption Act, despite being aware of this Court's consistent interpretations of the relevant sections, is a clear indication that this Court's interpretations have been in accordance with legislative intent." *Id.* at 21; *see* 1 Pa.C.S. § 1922(4) ("[W]hen a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language."); *PPL Elec. Utils. Corp. v. City of Lancaster*, 214 A.3d 639, 647-48 (Pa. 2019) ("[W]hen the legislature declines to amend a statute in contravention of this Court's prior interpretation of the statute, we may presume that our prior interpretation was and remains consistent with legislative intent." (citation omitted)).

Finally, Father disputes that there is any issue regarding Child's safety, as Mother has sole legal and physical custody of Child pursuant to the stipulated custody order, and any interactions Father has with Child by telephone or letter occur only with Mother's permission and supervision. Moreover, Father notes that even if he is released from prison before Child reaches adulthood and seeks modification of the existing custody arrangement, "the family court division of the court of common pleas would be fully capable of weighing all the facts and circumstances and making a decision that would ensure Child's ongoing safety and wellbeing," just as the court is "tasked with doing on a daily basis in many other matters." Father's Brief at 25.

More than fifty years ago, this Court recognized that "the Legislature intended the petition for involuntary termination of parental rights to be available *solely as an aid to*

*adoption.*" *B.E.*, 377 A.2d at 155 (emphasis added).[8] Accordingly, we have consistently held that, in order for a petitioning parent to retain their own parental rights while seeking to terminate the other parent's rights, the petitioning parent must demonstrate that there is an anticipated adoption of the child. In certain cases, we have determined that a petitioning parent must be afforded the opportunity to establish "cause shown" as to why they should not be required to relinquish their own parental rights. However, in those cases, there was a contemplated adoption. *See R.B.F, supra* (parents sought to allow their same-sex partners to their children); *M.E.L* (mother sought to allow her long-term partner, to whom she was not married, adopt her child). In the instant case, based on Mother's Petition, no adoption of Child is contemplated. Accordingly, under our caselaw, there is no basis upon which Mother may invoke Section 2901's "cause shown" exception to excuse her from the relinquishment requirement in order to terminate Father's parental rights.

Nevertheless, Mother contends that *M.E.L.* was wrongly decided, and she requests that we reverse our decision therein, and reinterpret the Adoption Act in a manner that would allow one parent to petition for the involuntary termination of the other parent's parental rights without requiring the petitioning parent to relinquish their own parental rights or demonstrate that there is a contemplated adoption. Recognizing that this interpretation would require this Court to overturn *M.E.L.*, Mother offers that "adherence to precedent is not 'an inexorable command.'" Mother's Brief at 22.

Although Mother avers that we "changed the words of the Adoption Act" in *M.E.L.* when we held that there must be an "imminently planned or currently contemplated adoption" in order for a petition for termination of parental rights to be cognizable, Mother's

---

[8] We recognize that, at the time our decision in *B.E.*, the Adoption Act did not contain a "for cause" provision similar to Section 2901.

Brief at 26-27, we reiterate that, prior to *M.E.L.*, we consistently interpreted the Act as requiring that a parent seeking to terminate the parental rights of the other parent relinquish their own parental rights, unless there was a valid contemplated adoption. *M.E.L.* is wholly consistent with this precedent.

Further, as discussed above, this interpretation is consonant with the underlying purpose of the relinquishment requirement of an existing parent's rights prior to adoption, which is "to facilitate a 'new parent-child relationship' between the child and the adoptive parent." *M.R.D.*,145 A.3d at 1128; *see also In re B.E.*, 377 A.2d at 156 ("Termination of parental rights permits the child and the adoptive parent or parents to establish a new parent-child relationship through adoption."). As there is no contemplated adoption of Child in the instant case, excusing Mother from Section 2711(d)'s relinquishment requirement based on Section 2901's cause shown exception would not further the purpose of the Act.

Moreover, it is significant that the General Assembly has chosen not to amend the specific language of the Act upon which we based our prior decisions. Pursuant to Section 1922(4) of the Statutory Construction Act, it is presumed that, "when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language." 1 Pa.C.S. § 1922(4). As we explained in *Verizon Pennsylvania, Inc. v. Commonwealth*,

> One of the most venerable and fundamental tenets of statutory interpretation is that, whenever our Court has interpreted the language of a statute, and the General Assembly subsequently amends or reenacts that statute without changing that language, it must be presumed that the General Assembly intends that our Court's interpretation become part of the subsequent legislative enactment.

127 A.3d 745, 757 (Pa. 2015). Indeed, "the General Assembly is quite able to address what it believes is a judicial misinterpretation of a statute." *Id.* at 758.

Our decision in *B.E.* was rendered in 1977, and our decision in *R.B.F.* was handed down in 2002. Despite the General Assembly's awareness of this Court's construction of the Adoption Act for almost fifty years, it has not amended the language of the Act in a manner that would suggest that our interpretation is contrary to its intent, notwithstanding our observation in *M.E.L.* that "the relinquishment requirement for adoption and termination of another parent's rights over a child may be seen by some as anachronistic in this day and age." 298 A.3d at 129.

Notably, the General Assembly did amend the Act in 2020 by adding Section 2514, which provides that, when a child has been conceived as a result of rape or incest, "[n]otwithstanding any other provision of law to the contrary," when a petition has been filed by a parent seeking to involuntarily terminate parental rights of the other parent under Section 2511(a)(7), the petitioner shall not be required to aver that: (1) the petitioner will assume custody of the child until such time as the child is adopted; (2) an adoption is presently contemplated; or (3) a person with a present intention to adopt exists. 23 Pa.C.S. § 2514(1). Rather, when a child was conceived as a result of rape or incest, the "[p]arental rights shall be terminated if all other legal requirements have been met." *Id.* § 2514(2). The addition of Section 2514 demonstrates that the legislature is capable of eliminating, in certain circumstances, the requirement that a petitioning parent aver that a valid adoption is contemplated before the other parent's parental rights may be terminated under the Act. Indeed, under Mother's interpretation of the Act, it seems the 2020 amendment would have been unnecessary.

For the reasons stated above, we reaffirm our holding in *M.E.L.* that Section 2901's "cause shown" exception to the relinquishment requirement applies only when there is a

contemplated adoption of a child. Accordingly, we hold that Mother's petition for termination of Father's parental rights to M.L.R. was not cognizable under the Act, and we affirm the Superior Court's decision, which reversed the trial court's order terminating Father's parental rights.

Order affirmed.

Justices Donohue, Dougherty, Mundy, Brobson and McCaffery join the opinion.

Justice Dougherty files a concurring opinion in which Justices Donohue, Mundy and Brobson join.

Justice Wecht files a dissenting opinion.